Argued May 3, decided June 13, 1911.

## ANDREWS v. DONNELLY.

[116 Pac. 569.]

WATERS—DIVERSION—PRIORITIES—PLEADINGS.

1. Where complainants sued to compel the destruction of defendants' dam in a non-navigable stream from which complainants and defendants were taking water, so that the whole river would flow to the intake of complainants' ditch, and defendants also claimed the right to take all the water, the pleadings could not be construed as presenting a suit to ascertain and declare the respective rights and priorities of the parties in the use of the water.

WATERS—APPROPRIATION.

2. Where, in a suit to restrain defendants' use of the waters of a river, both complainants and defendants claimed by appropriation, and not as riparian proprietors, neither could deny that at the time of their alleged appropriations and at all times thereafter the waters were subject to appropriation, in the legal sense of the word, under the rule that no one can claim at the same time both as riparian owner and as appropriator.

JUDGMENT—CONCLUSIVENESS—EVIDENCE.

3. A decree in a prior suit that complainant ditch company had acquired title by prescription to the use of 1,080 inches of water in a river was conclusive only on the parties to that suit, and was not admissible as evidence in favor of the ditch company, to establish the extent of its rights as against persons who were strangers to that proceeding.

WATERS—DEEDS—EXTENT OF RIGHT—NEW APPROPRIATION.

4. Where deeds executed by riparian owners conveyed land on both sides of a river, with the right to the grantee to divert such portions of the water as might be necessary for irrigating purposes along the line of a millrace, and also to propel by water power any flour or other mill which might hereafter be constructed by the grantee, his heirs or assigns, at or near the town of E., such language conveyed only a right to a partial diversion of the stream, and amounted to a license to

appropriate only such water as was sufficient for the enterprise then in view, as actually applied to a useful purpose, within a reasonable time, so that additional water subsequently required, either for a new enterprise or a material enlargement of the old one, would constitute a new appropriation as against others who had appropriated water from the stream in the meantime.

WATERS—CONVEYANCES.

5. Where, after riparian proprietors had conveyed land to K., with the right to divert the waters of a stream for irrigation and mill privileges, K. joined with his grantors and others who were complainants' predecessors in title in building head gates and dams and reconstructing a ditch subsequently conveyed to complainants, whereby the water was taken upon and made appurtenant, not only to their lands, but also to lands of K. on the west side of the river, which he afterwards conveyed to complainant A., with all the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, there being at that time sufficient water for users on both sides of the river, K. and his grantees were estopped by A., subsequent increase of their use to deny the validity of complainants' appropriation.

WATERS—APPROPRIATION—RIGHTS OF PRIOR APPROPRIATOR.

6. While in the absence of statute the right of a prior appropriator of the water of a stream is paramount, such right is limited to water reasonably necessary for such useful purpose and project as may be fairly within the appropriator's contemplation at the time of the appropriation, and which is actually applied to the purpose intended within a reasonable time, and by the exercise of reasonable diligence.

INJUNCTION—PARTIES—PROOF.

7. To authorize an injunction, the rights which it is designed to protect must be established with certainty, and to that end all persons interested in the thing concerning which the dispute has arisen should be made parties.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE BURNETT.

Fred Andrews, Joseph Cuhna, Odd Teel, George T. Higginbottom, Mildred Spike, Elvira Teel, unite with the Allen Ditch Company, a corporation, as plaintiffs, and bring this suit to enjoin Frank Donnelly, William H. Doughtrey and J. G. Thomas from diverting any of the water of the Umatilla River, a nonnavigable stream, from a point above the intake of an irrigation canal which plaintiffs aver they own and maintain by virtue of an appropriation prior and superior to any right of the defendants.

Concerning the plaintiffs, the moving parties assert, in substance, that the natural persons are the real parties

in interest, and that the corporation plaintiff, of which they are all and the only members, was organized by them for convenience and as a holding concern to manage the business of the diversion and distribution of water to them as individuals through their irrigation plant. They allege in substance that the natural persons plaintiff are the owners of large tracts of what was formerly arid land in certain sections in township 3 north, range 29 east, of Willamette Meridian, incapable of profitable use without irrigation; but the complaint does not describe the acreage owned by each individual, or the irrigation requirements of any single tract, or the use to which it is put. The complaint goes on to state that about 1870 the plaintiffs and their grantors and predecessors in interest built a ditch and flume tapping the Umatilla River at a point named, and, diverting thereby 1,080 inches of the water of the river, miners' measurement, under a 6-inch pressure, have continually used it on their lands for domestic purposes, watering live stock, and the irrigation of crops, all in an open, notorious, exclusive, and uninterrupted manner, whereby they have reclaimed and seeded about 600 acres of these lands to alfalfa, orchard shrubbery, and ornamental trees, all of which would die but for the use of the water. The plaintiffs then charge that about July 16, 1907, the defendants constructed a dam across the river at a point above the intake of plaintiffs' ditch, thereby turning the water entirely away from plaintiffs' irrigation system, and that defendants have continued and will continue to maintain the dam and diversion of the water unless restrained. The prayer is for the removal of the dam and to prevent the defendants from interfering with the flow of waters to plaintiffs' ditch, and for general relief.

The defendant Thomas denied every allegation of the complaint, and further disclaimed any interest in the controversy. The defendants Donnelly and Doughtrey admit

the nonnavigable character of the Umatilla River, and that they will continue to maintain their dam, but otherwise traverse every allegation of the complaint. They state also, in substance, that since May 18, 1907, they have been and are now the owners of certain lands in section 16, township 3 north, range 29 east, described by metes and bounds, upon which at all times mentioned in the answer was a grist and feed mill, the machinery of which is propelled by water conducted to it by a race and flume, also the property of defendants, and that ever since December 27, 1883, they and their predecessors in title, by means of said race, have appropriated from the Umatilla River and conducted to the mill a sufficient quantity of water to operate the mill and to irrigate lands along the line of the ditch. As a basis of their right to do this, they aver that, in the years 1883, 1884, 1885, after this appropriation of the water, J. H. Koontz, their predecessor in title, "obtained from the owners of all of the riparian lands on both sides of said Umatilla River, from and adjacent to said point of intake of said mill race to and adjacent to said point of outlet of said millrace, the right to divert from its natural channel and convey from said Umatilla River and through said millrace such portions of the water of said Umatilla River as might be necessary for the irrigation of the lands along the line of said millrace, and also to propel by water power any flouring mill which might then or thereafter be constructed on the lands of the defendants, and ever since said time the said rights, so obtained by the said James H. Koontz, have been continuously enjoyed by him, defendants' other predecessors in title, and these defendants."

The defendants contend that the water thus appropriated is essential to the operation of the mill and the irrigation of lands under their ditch, and that their appropriation is prior and superior to any right of plaintiffs. Defendants also seek to estop the plaintiffs from alleging

anything stated in the complaint because of the conveyances to Koontz by the former riparian owners of the right to divert water to his mill and for irrigation purposes, some of which riparian owners were predecessors in title to some of the plaintiffs, and as further ground of estoppel charge that at the time plaintiffs and their predecessors appropriated the water they knew that Koontz had taken the water and was using it for the purposes of the mill and irrigation. They pray that the plaintiffs be estopped to allege anything stated in the complaint; that the right of defendants to use sufficient water of the river to operate the mill and to irrigate along their race be decreed to be superior to any right of plaintiffs; and that the bill be dismissed, with costs.

The reply traverses the answer in almost all its averments, and affirmatively pleads an estoppel against defendants' allegations about the deeds from the former riparian owners, on the ground, in substance, that in 1889, after the execution of said deeds to Koontz, plaintiffs' predecessors in title, including the riparian grantors of Koontz, together with Koontz himself, then a landowner on the west side of the river, built a dam in the river at or about the point of the present intake of plaintiffs' ditch and reconstructed the ditch, and thereby openly and notoriously made a further visible and exclusive appropriation of 1,080 inches of the water of the river for use, and which was used on their lands and the lands of Koontz then owned by him continuously and exclusively since then for the beneficial purposes of irrigation, domestic affairs, and watering live stock.

The decree was in effect that the defendants were first of all, entitled to enough water, without naming the quantity, to keep their wooden flume from drying up in the summer time; that plaintiffs are next entitled to have 500 inches, miners' measurement, flow down their ditch; that, thirdly, defendants have enough water to

operate their mill and to irrigate not to exceed 100 acres of land under their ditch, after which, fourthly, plaintiffs should have 580 inches of water, making the total of 1,080 inches claimed at the outset. The defendants were enjoined from interfering with plaintiffs' rights as thus defined, and were cast in costs and disbursements amounting to $1,083.15. The defendants appeal.

REVERSED.

For appellants there was a brief with oral arguments by *Messrs. Carey & Kerr, Mr. Harrison Allen, Mr. R. R. Johnson* and *Mr. Frederick Steiwer.*

For respondents there was a brief with oral arguments by *Messrs. Raley & Raley.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The Umatilla River is an unnavigable stream which takes its rise in the Blue Mountains near the eastern boundary of the county bearing its name, and, after receiving various affluents, flows in a general north to northwest course in passing the lands mentioned in this suit. The holdings of the plaintiffs are on the west side and premises of the defendants are on the east side of the river. After the fall rains have set in and until the melting snows of the mountains are gone in the early summer, there is enough water for all purposes; but by July the river gets low, and, until some time in September, there is a scarcity of water for late crops, such as the second and third crops of alfalfa, and not enough to operate defendants' mill to its full capacity.

1. The pleadings cannot be construed into a suit to ascertain and declare the respective rights and priorities of the parties in the use of the waters of the river. The plaintiffs pray for the utter demolition of the defendants' dam, so that the whole river may flow without hindrance to the intake of the Allen ditch; while the defendants, by the erection of a concrete dam entirely across the river

above the diversion plant of plaintiffs, coupled with their avowed purpose to continue that policy, evidently intend to keep the water entirely away from the plaintiffs when their need is the sorest. In brief, each party wants all the water.

2. Both plaintiffs and defendants claim as appropriators, and not as riparian owners. The defendants argue that at the time the plaintiffs diverted the water in the first instance the stream was not one from which water could be appropriated, in the legal sense of the word, because the riparian ownership of the lands below the point of diversion had passed from the general government into private hands prior to the act of Congress of March 3, 1877, c. 107, 19 Stat. 377 (U. S. Comp. St. 1901, p. 1548), known as the "Desert Land Act," and prior also to the diversion upon which plaintiffs found the inception of their claims. The defendants construe the act mentioned to mean that, whereas, before its enactment, appropriation could only be made where all the lands adversely affected were in the public domain, now, since its passage, the first appropriator may lawfully take the water of a stream, without regard to whether the lower riparian owners are private individuals or the general government; but that plaintiffs cannot claim the benefit of that act, because they diverted the water before its passage. But we think that neither the plaintiffs nor the defendants are in a position to raise this objection to appropriation as against each other, because none of them is a riparian owner, and the claim on both sides is that of appropriation. No one can claim both as a riparian owner and as an appropriator at the same time. While he may be one or the other of those characters, he cannot be both: *Davis* v. *Chamberlain,* 51 Or. 304 (98 Pac. 154). Some riparian owner defending or attacking as such might, in a proper case, raise that question, but no such party is before the court in this

proceeding. We conclude that, as between the parties and on the record before us, the waters of the Umatilla River at all the times mentioned in the pleadings were the subject of appropriation in the legal sense of the word.

3. The plaintiffs assert title to the use of 1,080 inches of water, and offer as proof of that amount the decree of this court in the case of the *Oregon Land & Construction Co.* v. *Allen Ditch Co.*, a plaintiff in this suit. The case is reported in 41 Or. 209 (69 Pac. 455: 93 Am. St. Rep. 701). The plaintiff there as a lower riparian proprietor sought to enjoin the Allen Ditch Company from diverting the water of the river in question away from the downstream lands of the plaintiff; but that suit was successfully defended on the ground that the defendant had acquired title by prescription to the use of 1,080 inches of water as against the plaintiff, having used the water adversely for more than ten years continuously. But the conclusion reached in that litigation bound only the parties to that suit, and hence cannot be used by the successful contestant there as evidence in its favor against the defendants here, who are strangers to that proceeding. Excluding that decree from the evidence here, as we ought, no definite testimony remains even as to the aggregate amount of water diverted or needed by the plaintiffs, much less as to the particular amount required or useful for the separate tracts owned by the several individual plaintiffs.

4. Equally indefinite is the testimony on behalf of the defendants relating to the actual amount of water originally appropriated by their predecessors in title to the mill property, or requisite for the purposes in contemplation at that time. In 1883, Mr. Koontz, the founder of the milling industry there, built a flouring mill having a capacity of 50 barrels every 24 hours. After it had been in operation for about two years, it was destroyed by fire, and he afterwards built a new mill with the

enlarged capacity of 150 barrels per day, requiring greater water power. Machinery for manufacturing alfalfa meal has also been added to the milling plant since the first appropriation on the east side of the river.

The defendants seem to count upon the deeds from the former riparian owners to Koontz as giving the present owners of the mill unlimited and exclusive right to take the water of the stream in quantities ever increasing in proportion as their milling plant is enlarged, even to the diversion of the whole river into the millrace. We do not so construe the terms of those deeds, nor give them the effect desired by the defendants. The deeds conveyed to Koontz the right to divert from its natural channel and away from the land of the grantors, through the millrace, "such portions of the water of the Umatilla River as may be necessary for irrigating purposes along the line of said mill race and also to propel by water power any flouring or other mill which may hereafter be constructed by the said James H. Koontz, his heirs or assigns at or near the town of Echo." This language of those deeds clearly indicates only a partial, and not a total, diversion of the stream as contemplated by the parties. It amounted to a license to the grantee to appropriate water sufficient for the enterprise then in view. He had the right to make one appropriation and to follow it up by actual application to the useful purpose designed within a reasonable time; but that would determine his right as of that date, if, indeed, it did not exhaust his privilege under that license. At any rate, each new enterprise or material enlargement of the old one requiring additional water would call for a new appropriation.

5. The parties to the deeds by their subsequent conduct put upon those writings a construction in consonance with the idea that the mill was to have only a part of the water. Without dispute, it appears in the testimony that

after the mill had commenced operations its then owner, Mr. Koontz, joined with his grantors in those deeds, and other parties, plaintiffs' predecessors, in building head gates and dams, and reconstructing the ditch now owned by plaintiffs, whereby the water was taken upon and made an appurtenance, not only to their lands, but also to his own land on the west side of the river, which he afterwards conveyed to plaintiff Andrews "with all the tenements, hereditaments or appurtenances thereunto belonging or any wise appertaining." There was then water for users on both sides of the river. Mr. Koontz could not in equity and good conscience avail himself of the assistance of his then co-workers to reclaim his land and make the water appurtenant thereto, as well as to their holdings, and destroy the appurtenance after he had conveyed the land to one who bought on the faith of the then situation created by Koontz himself. His grantees stand in no better condition. They also took with knowledge of the situation as it then stood and were put upon their inquiry.

6. Before the country was so thickly settled at it is now, the practice for the appropriator of water "to keep all you get and get all you can" was in many cases tolerated; but, yielding to reason and justice to all, the later authorities have established a different rule. We conceive it to be the law, except as modified by statute, that the right of a prior appropriator is paramount, but the right is limited to such an amount of water as is reasonably necessary for such useful purpose and project as may be fairly within contemplation at the time the appropriation is made. Following the appropriation, the appropriator is entitled to a reasonable time within which, by ordinary diligence, he may complete the project and actually apply the water to the useful purpose intended. What is reasonable, both as to the amount of water and as to the time any given project may be completed, must

depend upon the facts and circumstances of each par-
ticular case: *Ison* v. *Sturgill,* 57 Or. 109 (109 Pac. 579),
and *Porter* v. *Pettengill,* 57 Or. 247 (110 Pac. 393), are
instructive cases on these matters.

Under the principle already noticed that any material
enlargement of an original project or the inauguration of
a new enterprise requiring additional water would call
for a new appropriation which must be in subordination
to the rights of others as then existing, the testimony on
the part of the plaintiffs is not clear as to the scope of the
undertaking in which they and their predecessors in inter-
est at first engaged. We are unable to determine whether
either plaintiffs or defendants have merely carried out
their original designs, or whether they have gone on into
new and enlarged ventures, demanding more and more
water, until, as appears by the pleadings, they both want
all the water.

7. We are satisfied from the evidence that plaintiffs
and their predecessors were using the water for domestic
purposes, watering live stock and irrigating on the west
side of the river, before the diversion of water to the
mill on the east side; but to what extent, either in the
aggregate or as to any particular tract, is not disclosed
by the record before us. Both plaintiffs and defendants
have devoted their energies in this litigation, in the main
to the establishment of mere priorities, without reference
to what is a reasonable amount of water to be used, or
what amount was in fact appropriated in the first
instance. Under such circumstances, while we are satis-
fied that all the parties have rights in the water as
against their opponents here, the record does not furnish
us sufficient data upon which to declare or to define those
rights with that certainty necessary to support the extra-
ordinary remedy of injunction. To authorize an injunc-
tion, the rights which it is designed to protect should be
established with certainty, and to that end all persons

interested in the thing about which the dispute has arisen should be brought before the court. This was done in *Hough* v. *Porter*, 51 Or. 318 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), where Justice KING points out the futility and waste of effort in attempting to settle such a controversy by piecemeal.

We conclude that the decree of the circuit court should be reversed and the suit dismissed without costs or disbursements to either party, and without prejudice to any other suit either may deem it advisable to institute concerning the matters in dispute.

REVERSED: SUIT DISMISSED.