# Wytheville

Iron City Savings Bank v. Henri Isaacsen.

June 16, 1932.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*W. M. Phipps* and *James G. Martin*, for the appellant.

*W. L. Parker, James E. Heath* and *William G. Maupin*, for the appellees.

Epes, J., delivered the opinion of the court.

On June 21, 1930, the Iron City Savings Bank, a corporation chartered under the laws of the State of Ohio, instituted its suit in chancery in the Circuit Court of the city of Norfolk against Henri Isaacsen and others.

The bill alleges that Henri Isaacsen owes the complainant a debt which is evidenced by his negotiable note for $13,000.00, dated May 15, 1924, payable on demand to the Iron City Savings Bank at its office in Ironton, Ohio. The collection of this alleged debt is the main object of the suit;

but as ancillary to the accomplishment of its main object, the bill contains the following allegations and prayers:

"While so indebted, on or about April 30, 1929, Henri Isaacson gave to his wife, Irma Isaacsen, 139 shares of the common stock of Southeast Lumber Export Company, Incorporated; and 'did sign and endorse on the backs of said certificates of stock an order directing the transfer of the certificates of stock on the books of the Southeast Lumber Export Company, Incorporated, to the said Irma Isaacsen,' which stock has been transferred on the books of the corporation to Irma Isaacsen, or Mrs. Henri Isaacsen, and now stands thereon in her name. The gift, assignment and transfer of this stock to Irma Isaacsen is void as to the complainant, because it was made without consideration and for the purpose of hindering, delaying and defrauding complainant as a creditor of Henri Isaacsen.

"Henri Isaacsen and Irma Isaacsen are non-residents of Virginia and are residents of the State of New York. Henri Isaacsen has estates or debts owing to him in the city of Norfolk, Virginia, and has 'assigned or disposed of, or is about to assign or dispose of, his estate, or a material part thereof, with intent to hinder, delay and defraud his creditors.' "

The bill further alleges that "the gift, conveyance, assignment and transfer" of this stock to Irma Isaacsen was made in the city of Norfolk, Virginia; and that "the principal office of the Southeast Lumber Company, Incorporated, is located in the city of Norfolk, Virginia, and the records and books (thereof) are kept and maintained in the said city." But the bill does not allege (and there is no evidence tending to show) that it is a corporation created under the laws of Virginia, or that the certificates of stock issued by it for the 139 shares here involved are within the State of Virginia.

The bill contains the following specific prayers. (1) It

is prayed that Henri Isaacsen, Irma Isaacsen, the Southeast Lumber Export Company, Incorporated, and Elmer S. Anderson, its president, and Virginia National Bank of Norfolk be made parties defendant, and that the last three mentioned be required to answer under oath what effects, property and assets of Henri Isaacsen each of them has in his (or its) possession or under his (or its) control. (2) It prays that all the estate of Henri Isaacsen in Virginia "including choses in action  *  *  *  and other intangible personal property, claims or equities," particularly such as is in the possession of or under the control of the Southeast Lumber Export Company, Incorporated, or Elmer S. Anderson, be attached and subjected to the payment of complainant's debt. (3) It prays that the assignment and transfer of said 139 shares of stock to Irma Isaacsen by Henri. Isaacsen be set aside as void as to complainant, and that the stock be ordered to be sold as the property of Henri Isaacsen for the satisfaction of complainant's debt. (4) It prays "that the said Southeast Lumber Export Company, Incorporated, (and) Elmer S. Anderson, each and both be restrained from assigning, setting over or transferring the said 139 shares of stock  *  *  *  carried on the books of the Southeast Lumber Export Company, Incorporated, in the name of Irma Isaacsen or Mrs. Henri Isaacsen." There is no specific prayer for a personal decree against Henri Isaacsen for the amount of the debt alleged to be due by him to the complainant; but the bill contains a prayer for general relief.

A subpoena was issued on June 21, 1930, requiring the sergeant of the city of Norfolk to summon defendants to answer the bill. The subpoena was duly served in person on Henri Isaacsen and Elmer S. Anderson. No return was made as to Irma Isaacsen. The return as to service on the Virginia National Bank is not material to any question raised upon this appeal. The return as to service upon

Southeast Lumber Export Company, Incorporated, reads as follows:

"Executed * * * by delivering a copy of the within to Elmer S. Anderson, President Southeast Lumber Export Company, a corporation, in the city of Norfolk, wherein he resides and wherein the said corporation is doing business." The point is made that inasmuch as this corporation is not a Virginia corporation this return is defective, but in the view which we take of the case we deem it unnecessary to consider the question here raised.

On the same day an attachment was issued against "Henri Isaacsen and Irma Isaacsen, principal defendants," and Southeast Lumber Export Company, Incorporated, Elmer S. Anderson and Virginia National Bank of Norfolk, codefendants. It directed the sergeant of the city of Norfolk to attach so much of the effects of Henri Isaacsen as will be sufficient to satisfy the demand of the plaintiff, to-wit, $11,500.00; and to summon all the defendants and codefendants to "answer said petition or state the grounds of defense thereto."

The only returns made under this attachment were the returns showing service thereof on the defendants. These returns are in the same language as the returns on the subpoena above mentioned, except that there is a return as to Irma Isaacsen showing that she was "not found." There is nothing in these returns or in the evidence which even tends to show that the certificates for the 139 shares of stock here involved were in the possession of either the corporation or Elmer S. Anderson, or that they, or either of them, had any control over the certificate, or the stock the ownership of which is evidenced thereby.

An order of publication was duly entered and published as to Irma Isaacsen requiring her to appear and answer the bill filed by the complainant.

None of the defendants appeared except the Virginia

National Bank, which answered and said that it had $15.58 to the credit of Henri Isaacsen.

No depositions were taken or other evidence introduced. On October 15, 1930, the cause came on to be heard on the bill and proceedings above mentioned; and the court entered a decree in which it adjudged, ordered and decreed as follows: (1) That Henri Isaacsen is indebted to the complainant on said notes in the sum of $11,500.00 with interest thereon at seven per cent from December 31, 1927; and (2) that Virginia National Bank pay to complainant the sum of $15.58, which Henri Isaacsen has on deposit with the bank, to be credited "on the judgment herein entered against Henri Isaacsen;" and (3) that the Southeast Lumber Export Company, Incorporated, is required, within fifteen days, to answer "what money or effects it has in its possession belonging to Henri Isaacsen and the present record owner of the said shares of stock above mentioned." The decree concludes thus: "It appearing to the court that there are other interests to be determined in this suit, this cause is continued on the docket until further order of this court."

Later, during the same term of the court, on November 6, 1930, Henri Isaacsen appeared and moved the court to set aside the decree of October 15th, and permit him to file his plea and answer. In support of this motion he filed the affidavits of Elmer S. Anderson (president of Southeast Lumber Export Company, Incorporated) and of his counsel, W. L. Parker. The complainant objected to the granting of this motion on the ground that the ninety days allowed to a defendant under section 6122[1] to file his

---

[1]Section 6122 as amended by Acts 1930, page 625, chapter 237, reads:

"A defendant in equity upon whom process has been executed shall file his answer or other defense in the court or in the clerk's office of the court in which the suit or proceeding is pending within ninety days from the day on which process has been returned executed, or if the bill shall not have been filed at that time, then within ninety days after the bill shall have been properly filed at rules, or after any amended or supplemental bill shall

answer or other defenses to a bill in chancery had long since expired, the bill had been taken for confessed as to Henri Isaacsen, and final decree entered; and that he had shown no good cause why he should then be permitted to file his answer or any other defense.

The affidavit of Elmer S. Anderson sets forth that Southeast Lumber Export Company, Incorporated, is a New York corporation, which has a place of business in Norfolk, Virginia; that Henri Isaacsen is an officer of that corporation; and that at the time he was served with process in this suit he was in Norfolk for the sole purpose of testifying in a suit of Gallie Friend against that corporation.

The gist of the affidavit of W. L. Parker is this: When Henry Isaacsen was served with process in this suit he employed him (W. L. Parker) to represent him in this suit; but he was very busy with other matters and overlooked filing an answer and other defense for his client in this cause within the ninety days allowed by section 6122. Henri Isaacsen has a complete defense on the merits to the various causes of action alleged against him in the bill; and if he should be permitted to file his answer and to set up his other defenses in this cause they would be as follows:

"He would demur to the bill on the ground that it is apparent that this court has no jurisdiction over the subject matter because of the fact that some of the parties whose

---

have been filed unless after notice to the adverse party, and for good cause shown, additional time be given by the court, or the judge thereof in vacation, within which to file the same. After the lapse of such period of ninety days, or such additional time, if any such be granted, no answer or other defense shall be received except for good cause shown and upon payment to the complainant of his costs up to that time, or such part thereof as the court or judge shall deem reasonable, and unless the defendant will undertake to file his answer within such time as the court or judge shall direct, and submit to such other terms as the court or judge shall direct, for the purpose of speeding the cause; provided, however, that if a demurrer or plea to the jurisdiction or other special plea be interposed by the defendants the said defendant shall have at least thirty days after the disposition of said plea or pleas or demurrer within which to file his answer or other defense; provided, however, that no answer can be filed after a bill has been taken for confessed and a final decree entered in the cause."

presence in this suit is absolutely necessary in order to give a court of equity jurisdiction are non-residents and cannot be personally served in this State.

"Coming to the merits of the case, this defendant would deny liability on the note mentioned in said bill on the ground that he was an *accommodation* maker thereof solely and that this fact was known to the complainant. He will also plead the statute of limitations and he would further seek to defeat a decree by showing that there had been no fraudulent conveyance made by him. Fraudulent conveyance is absolutely essential to jurisdiction of a court of equity in this matter, and he would further insist on his right to a trial by jury in an action at law on the ground that this court is without jurisdiction; the only matter in this suit remaining after the question of fraudulent conveyance had been disposed of being one purely cognizable at law."

On November 8, 1930 (at the same term of the court at which the decree of October 15th had been entered), the court entered the following decree:

"The court ·* * * being of opinion that the said defendant has shown good cause for setting aside said decree and allowing the defendant to interpose such demurrer, plea or answer as he may be advised to file to said bill, doth set aside and vacate the said decree of October 15, 1930, and * * * allow the said defendant thirty days within which to file such demurrer, plea, or answer, as he may be advised to file to the said bill." The court does not specify in its decree the good cause which it is of opinion has been shown.

No provision was made in the decree for the payment of costs by Isaacsen; but it does not appear from the record that any motion was made by the complainant that Isaacsen be required to pay the costs of the suit or some part thereof, as a prerequisite to being permitted to file his answer or other defense.

Henri Isaacsen then filed his answer and a special plea of the statute of limitations. In his answer he denies (1) that he is indebted to the complainant as alleged or in any other sum, and (2) that he has assigned, or disposed of, or is about to assign or dispose of, any part of his property with intent to hinder, delay or defraud his creditors; and then he concludes as follows: "This suit should be dismissed for the reason that Irma Isaacsen, alleged to be the transferee of the stock, * * * is a necessary party in this suit; * * * she has not been served with process, and being a non-resident of the State it is not possible to serve her with process."

The cause was set down for hearing on the plea of the statute of limitations only. Depositions were taken by Henri Isaacsen which fully sustain that plea; and on February 21, 1931, the court entered its decree sustaining that plea and dismissed the bill. From that decree Iron City Savings Bank has appealed.

■ The only assignment of error made by the appellant is that the court erred in allowing the plea and answer to be filed after the expiration of the ninety days allowed by section 6122 (as amended), without having shown good cause therefor and without requiring the defendant to pay the cost of the suit or some part thereof. The assignment of error is, we think, not well made.

In the instant case the fact that the court permitted the filing of the answer and plea without requiring the defendant to pay the cost of the suit, was equivalent to an adjudication that the defendant should not, under the facts of this case, be required to pay any part of the cost of the suit as a prerequisite to the filing of his defense. In this view we think the court was correct.

■ The presentation of the cause for setting aside the decree of October 15, 1930, and permitting Henri Isaacsen to file his answer and other defenses, is inartificially made

and lacks clarity; but it is sufficient to bring to the court's attention a much more substantial cause for doing so than the fact that the defendant's failure to file an answer or other defense at an earlier time was due to the neglect of his counsel. The gist of this cause is that the record failed to show that the court of chancery had acquired *actual* jurisdiction to administer any of the equitable relief prayed in the bill, and, therefore, ought to have refused to proceed to take jurisdiction of the cause for the purpose of establishing legal rights and administering legal remedies.

Only two grounds of chancery jurisdiction are alleged in the bill. The first is that the transfer of the 139 shares of the stock of Southeast Lumber Export Company, Incorporated, by Henri Isaacsen to Irma Isaacsen is null and void as to creditors, and the complainant is entitled to have it set aside and annulled. The second is that the complainant is entitled to an injunction against that corporation and Elmer S. Anderson, its president, restraining them from "assigning, setting over or transferring" the 139 shares of its stock standing on its books in the name of Irma Isaacsen or Mrs. Henri Isaacsen.

■■ A court of chancery has potential jurisdiction to set aside fraudulent conveyances and to grant injunctions; but the filing of a bill alleging a case falling within the potential jurisdiction of a court of chancery does not give the court actual jurisdiction of the alleged cause. For the court to have actual jurisdiction to exercise its potential jurisdiction, it must acquire jurisdiction of the person of *all* the parties necessary or of the *res* necessary to sustain a decree granting the equitable relief prayed. If either potential or actual jurisdiction to grant *some* equitable relief is lacking, a court of chancery is without jurisdiction of the subject matter of the alleged cause.

■■ The potential jurisdiction of a court of chancery, when properly invoked, is sufficient to sustain the exercise

of the power of the court to do all things necessary or proper to perfect its actual jurisdiction and to preserve the *status quo* while so doing; as for instance, by granting a temporary injunction. But if the parties or *res* necessary to the exercise of the actual jurisdiction of the court to grant, at least, some of the equitable relief proper under the allegations of the bill are not subsequently brought under the jurisdiction of the court, the jurisdiction of the court of chancery falls; and, so far as relates to the jurisdiction of the court to proceed to establish legal rights or administer legal remedies in the cause as to persons or property before it, the failure of jurisdiction relates back to the inception of the cause.

■■ Where some phase of the case alleged in a bill in chancery presents a good ground for equitable relief, *and* the court has acquired actual jurisdiction of all the parties, or of the *res*, necessary for the granting of some of the equitable relief to which the allegations of the bill entitle the complainant, a court of chancery may go on to a complete adjudication of the cause, even to the extent of establishing legal rights and administering legal remedies, which would otherwise be beyond the scope of its authority. In each such case the court is vested with a sound discretion to determine upon the facts and circumstances of the particular case, whether it is better to relegate the parties to a court of law for the establishment of their legal rights and the administration of legal remedies, or to go on and end the litigation by giving complete relief in the chancery cause. *Walters* v. *Farmers Bank*, 76 Va. 12, 20; *Shaw* v. *G. B. Beaumont Co.*, 88 N. J. Eq. 333, 88 Atl. 151, 2 A. L. R. 122. But generally speaking, in such a case it will not send the parties back to a court of law, but will retain jurisdiction for all purposes, and do complete justice between the parties.[2] This is true even where the proof may

[2]*McArthur* v. *Chase*, 13 Gratt. (54 Va. 683; *Beecher* v. *Lewis & Bagley*, 84 Va. 630, 6 S. E. 367; *Smith* v. *Smith's Admr.*, 92 Va. 696, 24 S. E. 280;

show that the complainant is not entitled to the equitable relief prayed, or that subsequent to the filing of the bill need for equitable relief has ceased to exist.[3]

■■ But even though the bill alleges matter proper for the exercise of the potential jurisdiction of a court of chancery, so that a demurrer will not lie, and the court has acquired actual jurisdiction of all the persons necessary to the exercise of such jurisdiction, if on the hearing it appears from the whole case that the alleged ground for, or need of, equitable relief was only colorable, and was employed as a mere pretext for bringing in a court of chancery a cause proper for a court of law, the court of chancery ought not to take jurisdiction for the establishment of legal rights or the administration of legal remedies. *Jones* v. *Bradshaw*, 16 Gratt. (57 Va.) 355; *Larkey* v. *Gardner*, 105 Va. 718, 54 S. E. 886. Upon principle and reason the same rule applies where it appears upon the hearing that, though the bill alleges matter proper for the exercise of the potential jurisdiction of a court of chancery, the court has not acquired jurisdiction of all the parties or of the *res* necessary to the exercise of that jurisdiction in any particular. Any other rule would break down the boundaries between the chancery and common law courts; and chancellors would find themselves under a colorable disguise, or without any substantial reason, changing the forum of litigation and assuming the settlement of controversies belonging exclusively to common-law courts.

■ In both of the cases mentioned in the above paragraph the objection to the jurisdiction of the court of chancery is that it lacks jurisdiction of the subject matter; and, therefore, the objection need not be set up by plea in

*Laurel Creek, etc., Co.* v. *Browning*, 99 Va. 528, 39 S. E. 156; *Vaught* v. *Meador*, 99 Va. 569, 39 S. E. 225, 86 Am. St. Rep. 908; *Miller* v. *Wills*, 95 Va. 337, 340, 28 S. E. 351; *Coons* v. *Coons*, 95 Va. 435, 441, 28 S. E. 885, 64 Am. St. Rep. 804.

[3]*Walters* v. *Farmers Bank*, 76 Va. 12; *Grubb* v. *Starkey*, 90 Va. 831, 20 S. E. 784; *Rison* v. *Moon*, 91 Va. 384, 393, 22 S. E. 165.

abatement, or by demurrer. It may be shown at any time; and the court, when it comes to its attention, should *ex mero motu* refuse to proceed to establish legal rights and administer legal remedies in the cause, and relegate the complainant to his remedies at law. *Jones* v. *Bradshaw*, 16 Gratt. (57 Va.) 355, 361, and cases cited under section 6105, Code Va. See, also, section 6084.

A suit brought by a creditor to set aside a conveyance of real or tangible property, or the assignment and transfer of intangible personal property, by his debtor to a third person on the ground that it was fraudulent as to creditors is primarily a suit *in personam*. If the court secures jurisdiction of the person of both the grantor and grantee, it proceeds to its conclusion as essentially a suit *in personam*. But such a suit has this added incident. If the property (the *res*) conveyed or transferred is within the territorial jurisdiction of court and has been brought under the control of the court, the court, if authorized to do so by statute, may proceed to a judgment against the property as a *res*, even though it has not acquired such jurisdiction of the parties as is necessary for an adjudication *in personam*. Where, however, the court has not acquired jurisdiction of all the parties necessary to an adjudication *in personam*, the suit becomes in its essential nature a proceeding *in rem;* and the court cannot in such a case proceed unless it has acquired control of the *res* by actual or constructive seizure thereof, or is by law given control thereof by virtue of its location within the territorial limits to which its process may reach.

Plainly the court had no power to enter a decree *in personam* in this cause as to the ownership of this stock and the right of the complainant to subject it to the payment of the debt alleged to be due to it. Irma Isaacsen, the transferee of this stock, was an indispensable party, and the court had acquired no jurisdiction over her person.

She was a non-resident who had been proceeded against only by order of publication. Therefore, for the court to have had actual jurisdiction to exercise its potential jurisdiction to adjudicate upon this question, it was necessary for it to have acquired control over the *res*, *i. e.*, the shares of stock themselves considered as a thing separate and apart from the ownership thereof; and the court has not, so far as this record discloses, acquired any jurisdiction over this stock which will support a judgment against it as a *res*.

There had been no actual seizure by the court of these shares of stock or the certificates evidencing them. There is no allegation or proof that the certificate evidencing them was, at the institution of this suit, or any time thereafter, within the State of Virginia; and the presumption is that the certificate evidencing these shares followed its owner, Irma Isaacsen, and was in New York, where it was beyond the power of the court to make an actual seizure of it.

In the very nature of things there can be no constructive seizure by a court of property the situs of which is not within the territory within which the court may make an actual seizure of property. If, therefore, the situs of these shares of stock was not within the State of Virginia, the Circuit Court of the city of Norfolk was powerless to seize them constructively or to adjudicate against them as a *res*.

A share of stock of a corporation is intangible personal property partaking of the nature of a chose in action; and considered as a *res* (*i. e.*, a thing separate and apart from its ownership or the possession of the certificate evidencing the ownership thereof), it is in existence only in the State by which the corporation was chartered. Thompson on Corp. (3 ed.) section 3482, section 5817, section 5818; *Jellenik* v. *Huron Copper Min. Co.*, 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647.

"The general rule is that shares of stock in a corporation are personal property, whose location is in the State where the corporation is created. It is true that for purposes of taxation and some other similar purposes stock follows the domicil of the owner; but considered as property separate from its owner, stock is in existence only in the State of the corporation. On this point the Supreme Court of the United States has said: 'The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit. of the true owner. As the habitation or domicil of the company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner.' " Thompson on Corp. (3 ed.) section 3482.

"Under the common law an execution could not be levied upon shares of stock in a corporation, unless the officer could get possession of the certificate in the hands of the shareholder, in which event he seized the stock as he would a note, bill or other chose in action. Nearly all the States, however, have statutes authorizing levies upon shares of stock as personal property which point out the manner in which the officer shall proceed in making the levy. * * * The stock of a non-resident in a foreign corporation may not, ordinarily, be levied upon unless the stock is actually within the State." Thompson on Corp. (3 ed.) section 5817.

"The general rule is that the situs of corporate stock is domicil of the corporation, or where its principal office is located, unless the corporation is made domestic for the purposes of suit. Therefore, where a corporation is organized under the laws of one State, but has its office in another State, shares of its capital stock are not within the local jurisdiction of the latter State for the purpose of the levy of an execution thereon, though officers of the

corporation are in the State of the forum, engaged in carrying on the corporate business there." Thompson on Corp. (3 ed.) section 5818.

There are cases which hold that "when certificates of stock in a corporation of one State are *held* in pledge or as collateral in another State, the courts of the latter may establish a lien thereon in a suit commenced by substituted service" (Thompson on Corp. (3 ed.) section 3490); but we have no such case presented here.

[19] If the Southeast Lumber Export Company, Incorporated, is not a corporation created and existing under the laws of Virginia, the court could not, and did not, acquire jurisdiction over the 139 shares of stock here involved as a *res* by service upon the corporation of either the subpoena or the attachment issued in this cause.

It is alleged in the bill that "the principal office of the Southeast Lumber Export Company, Incorporated, is located in the city of Norfolk, Virginia, and the records and books (thereof) are kept and maintained in the said city." But this allegation is not an allegation that this is a corporation created and existing under the laws of Virginia; and the pleader seems to have been careful to avoid alleging that it is a Virginia corporation. As this fact was not alleged, it is not taken as confessed by the taking of the bill *pro confesso* as to Henri Isaacsen and the corporation. It could not have been taken as confessed as to Irma Isaacsen, even had it been alleged; and there is no evidence in the record to show that it is a Virginia corporation. Therefore, it does *not* affirmatively appear from the record that the court has acquired jurisdiction over these 139 shares of stock as a *res*.

Where the power to exercise its potential jurisdiction to adjudicate with reference to the ownership of a *res* or the liability thereof for a debt depends wholly upon the courts having acquired jurisdiction of the *res*, all facts

essential to show the acquisition of jurisdiction over the *res* must affirmatively appear. Presumptions are indulged sometimes in favor of the continuance of jurisdiction after it has been made to appear that the jurisdiction of the court over the *res* has attached; but the inception of the court's jurisdiction over the *res* must be affirmatively established by the record, before the court may proceed to do anything further in the suit than to take such steps as may be necessary or proper to bring the *res* under its control and jurisdiction.

But in addition to this, the affidavit of Elmer S. Anderson filed by the defendant in support of his motion to set aside the decree of October 15, 1930, alleges that "Southeast Lumber Export Company, Incorporated, is a New York corporation" which had an office in the city of Norfolk, Virginia; and this allegation is not contradicted by anything in the record. Hence it was made to appear affirmatively to the court that the actual jurisdiction of the court to exercise its potential chancery jurisdiction to avoid and set aside this transfer of stock had not been established.

Prior to the enactment of chapter 482, Acts 1924, known as the uniform stock transfer act, it would appear that if Southeast Lumber Export Company, Incorporated, were a Virginia corporation, the steps taken in this cause would have been sufficient to give the court such jurisdiction over this stock as a *res* as would have supported a decree *in rem* against it subjecting it to the payment of complainant's debt, if established. *C. & O. Ry. Co.* v. *Paine & Co.*, 29 Gratt. (70 Va.) 502; Thompson on Corp. section 5818, section 5819, section 3524. But the enactment of the uniform stock transfer act has materially changed the law both with reference to the power of a court to make adjudications *in rem* as to shares of stock and to enjoin the

transfer of shares of stock by the issuing corporation,[4] where it is "a corporation organized under the laws of this State or of another State whose laws are consistent with this act."

By necessary implication, at least, this act prohibits a proceeding *in rem* against shares of stock in a corporation unless: (1) The certificate evidencing the ownership of the shares be actually seized by the court or it has been brought in some way into the possession of the court; or unless (2) the certificate therefor shall have been surrendered to the corporation which issued it; or unless (3) its transfer by the *holder* has been enjoined (italics ours). In the last case, however, it is to be noted that the *holder* must be before the court in person, for otherwise no valid order could be entered restraining him from transferring it. Therefore, in view of the provisions of the uniform stock trans-

---

[4]The material parts of the uniform stock transfer act, Acts 1924, page 766, chapter 482, Michie's Code Va. 1930, sections 3848 (2)–3848 (26), read as follows:

"Section 1. * * * Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable, although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent. * * * * * * * * * * * * * * *

"Section 5. * * * The delivery of a certificate to transfer title in accordance with the provisions of section 1 (section 3848(2) of this Code), is effectual, except as provided in section 7 (section 3848(8) of this Code), though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title.

"Section 6. * * * The endorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in section 7 (section 3848 [8] of this Code), though the endorser or transferor:

fer act, even were Southeast Lumber Export Company, Incorporated, a Virginia corporation, the court has not acquired such control of or jurisdiction over this stock as to entitle it to proceed by a decree *in rem* to exercise its potential jurisdiction to set aside the transfer thereof from Henri to Irma Isaacsen.

The only other equitable relief prayed is an injunction against the Southeast Lumber Export Company, Incorporated, and its president restraining them from transferring on the books of the corporation the 139 shares of the stock of the corporation standing thereon in the name of Irma Isaacsen, which had been assigned and transferred to her by Henri Isaacsen.

The right of the complainant to such an injunction is predicated entirely upon its right to have the stock transfer from Henri Isaacsen to Irma Isaacsen set aside; and the granting of such an injunction would necessarily affect the rights and interests of Irma Isaacsen in and to these shares of stock. Therefore, she was an indispensable party to

"(a) Was induced by fraud, duress or mistake to make the endorsement or delivery; or

"(b) Has revoked the delivery of the certificate, or the authority given by the endorsement or delivery of the certificate; or

"(c) Has died or become legally incapacitated after the endorsement, whether before or after the delivery of the certificate; or

"(d) Has received no consideration.

"Section 7. Rescission of transfer.—If the endorsement or delivery of a certificate:

"(a) Was procured by fraud or duress; or

"(b) Was made under such mistake as to make the endorsement or delivery inequitable; or

"If the delivery of a certificate was made (?),

"(c) Without authority from the owner or

"(d) After the owner's death or legal incapacity the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless

"(1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or

"(2) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to enforce his rights.

"Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it.

"Section 8. *Rescission of transfer of certificate does not invalidate subsequent*

this bill both in its aspect of a bill to set aside the stock transfer and in its aspect of a bill for an injunction. This being so, until the court had acquired jurisdiction of her person, or had acquired such control over these shares of stock as to give it jurisdiction to proceed against this stock as a *res* upon an order of publication as to her, it had not acquired actual jurisdiction to grant a permanent injunction restraining the corporation, or its president, from transferring these shares of stock on the books of the corporation.[5]

However, in the absence of any statute restricting the power of the court to do so, when personal service had been gotten on the corporation and its president, the court would have had, by virtue of its potential jurisdiction, the power to grant a preliminary temporary injunction against them to preserve the *status quo* while proper steps

---

*transfer by transferee in possession.*—Although the transfer of a certificate or of shares represented thereby has been rescinded or set aside, nevertheless, if the transferee has possession of the certificate or of a new certificate representing part of the whole of the same shares of stock, a subsequent transfer of such certificate by the transferee, mediately or immediately, to a purchaser for value in good faith, without notice of any facts making the transfer wrongful, shall give such purchaser an indefeasible right to the certificate and the shares represented thereby.

\* \* \* \* \* \* \* \* \* \* \* \* \*

"Section 13. *No attachment or levy upon shares unless certificate surrendered or transfer enjoined.*—No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it.

"Section 14. *Creditor's remedies to reach certificate.*—A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity, in regard to property which cannot readily be attached or levied upon by ordinary legal process." Sections 3848 (2), 3848 (6) to 3848 (9) 3848 (14), 3848 (15), of this Code.

[5]*Miller* v. *Klasner*, 19 N. M. 21, 140 Pac. 1107; *Jeffries-Ba Som* v. *Nation*, 63 Kan. 247, 65 Pac. 226; *Andrews* v. *Donnelly*, 59 Or. 138, 116 Pac. 569; *Nash* v. *City of Monroe*, 198 N. C. 306, 151 S. E. 634; *Hermann* v. *Mobley*, 172 Ga. 380, 158 S. E. 38; *Monessen Borough* v. *Monessen Water Co.*, 243 Pa. 53, 89 Atl. 829; *Ranney* v. *Stoll*, 174 Mich. 440, 140 N. W. 607; 14 R. C. L., Injunctions, section 29.

were being taken to acquire jurisdiction of the person of Irma Isaacsen or of the *res*. But as has been indicated, such jurisdiction has only a tentative existence. It is assumed in anticipation of, and is dependent upon the subsequent acquisition of, perfected actual jurisdiction. If actual jurisdiction be not subsequently acquired, the existence of such tentative jurisdiction falls, and its failure relates back to the inception of the cause in so far as it affects the jurisdiction of the court to adjudicate upon the merits of the cause. The exercise of such tentative jurisdiction is not such a taking of jurisdiction by a court of chancery for one purpose as will warrant the court in retaining jurisdiction of the cause to establish purely legal rights and administer legal remedies. We are speaking here of jurisdiction to grant a preliminary temporary injunction before process has been served upon all indispensable parties. Where process has been served in person on all indispensable parties, or the court has acquired jurisdiction of the *res* and all indispensable parties have been brought before the court by personal service or order of publication, the jurisdiction to grant a temporary injunction is actual chancery jurisdiction; and though the court of chancery may have taken jurisdiction only upon the ground that the nature of the cause required such injunctive relief, it may then go on and do complete justice.

But in view of the provisions of the uniform stock transfer act (see footnote 5 *ante*) the complainant was not on the record in this case entitled to even a preliminary temporary injunction against the corporation or its president restraining a transfer of this stock to preserve the *status quo*. The necessary implication from the provisions of this act is that the certificate of a share of stock is thereby made so far negotiable that unless the court or the corporation has acquired possession or control of the certificate evidencing ownership of a share of stock or the holder

thereof has been enjoined from transferring it, an injunction will not lie against the corporation or its officers to restrain its transfer on the books of the corporation. The certificate is made analogous to a negotiable note before its maturity, and the situation of the corporation analogous to that of the maker of such note. An injunction will not lie against the maker of a negotiable note before its maturity to restrain payment of the note by him unless the holder of the note is personally before the court or the court has acquired the possession or control of the note. *Nash* v. *City of Monroe*, 198 N. C. 306, 151 S. E. 634. If this were not so, the negotiable character of the note would be largely destroyed. Likewise, if a corporation may be enjoined, even temporarily, from transferring a certificate of stock where the holder thereof cannot be enjoined from transferring it and neither the court nor the corporation has possession or control thereof, it would to a large extent defeat the purposes of that act and the *quasi* negotiable character imparted to the certificate by the provisions of the uniform stock transfer act.

From what has been said it follows that the court of chancery erred in proceeding to enter a decree against Henri Isaacsen in this cause for a personal judgment against him on the alleged debt, for the reason that it had not acquired actual jurisdiction to grant any of the equitable relief prayed. This being so, when it was brought to the attention of the court later at the same term, the court should have, as it did, set aside its decree of October 15, 1930. Having set aside the decree, the proper course for the court then to have pursued was to have transferred the cause of action of the complainant against Henri Isaacsen to the law side of the court in accordance with section 6084 of the Code. Had this been done Henri Isaacsen would have been at liberty then to file such pleas and other defenses to the cause of action against him as he might

deem proper.  Section 6122 of the Code has no application to an action at law; and a complainant cannot impose its limitations upon an action at law by suing in equity upon a cause of action proper for a court of law, and then having the cause transferred to the law side of the court.  Nor do its limitations follow the cause into the court of law when the cause is transferred to the law side by the court of its own motion.

Instead of transferring the purely legal cause of action of the complainant against Henri Isaacsen to the law side, the court proceeded with it on the chancery side of the court, but treated the fact that it did so as good cause for permitting Henri Isaacsen to file his answer and plea of the statute of limitations.  When, under circumstances such as those in this case, a court of chancery retains jurisdiction of the cause, and proceeds therein to establish legal rights and administer legal remedies, it acts as a substitute for a court of law, rather than as a court of chancery (*Smith* v. *Smith*, 92 Va. 696, 698, 24 S. E. 280); and the fact that it assumes to do so, instead of transferring it to the law side of the court, constitutes good cause for permitting the defendant to file any defense which he could have filed had the case been transferred to the law side.

For the reason stated we think that the court did not err in permitting Henri Isaacsen to file his plea of the statute of limitations or his answer in so far as it sets up defenses in bar of the right of the complainant to recover against him on the alleged debt; and that the decree of the trial court should be affirmed.

*Affirmed.*