## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Lichtenstein et al.

v.

Harry Sandler et al.

Case No. CH-5816

By JUDGE AUSTIN E. OWEN

August 17, 1984

On August 9, 1984, [there was] argued before me the Demurrer of Harry Sandler to the first Amended Bill of Complaint and the Demurrers of International Parkway Investment Properties, Inc., et al. to the first Amended Bill of Complaint. At the conclusion of those arguments I took my ruling under advisement in order to read the cases cited by counsel on the issue of the extent to which knowledge of an agent is imputable to the principal.

I have now read those cases and carefully considered all of the grounds of demurrer set forth and am of the opinion that the Demurrers should be overruled. On the specific contention that any knowledge of V. A. Etheridge, Jr., could not be imputed to Harry Sandler because the interest of Etheridge was allegedly adverse to that of Sandler, it is the holding of the court that such a determination cannot appropriately be made at this demurrer stage of the proceeding.

January 28, 1985

This matter came for hearing before the Court on December 21, 1984, pursuant to the direction of Judge H. Calvin Spain of this Court. Subsequent to the setting of the hearing, Judge Spain found it appropriate to disqualify himself from presiding at such hearing.

Counsel indicated an understanding that at the conclusion of oral argument on November 30, 1984, upon Defendants' Motions for Summary Judgment; and directed that a further hearing be held on December 21, 1984, limited to the issue of whether the Defendant, Sandler, at the time of his purchase of the real property in question, had notice of an agreement between 1492 Co. and International Parkway Investment Properties, Inc., Seven D Corporation and Seven A Corporation for the purchase of the same property.

No evidence has been offered to show that the Defendant, Sandler, had actual knowledge of the 1492 Co. agreement. Plaintiff's contend, first, that V. A. Etheridge, Jr., was the agent of Sandler; and, secondly, that William H. Duckworth was the agent of Sandler; and that the knowledge of Etheridge and of Duckworth of the existence of the agreement with 1492 Co. is properly imputed to their principal, Sandler.

In this respect, the evidence is clear that even if the Court were to find that Etheridge was the agent of Sandler (and the court makes no such finding but finds to the contrary), his interest was adverse to that of Sandler nd the evidence is clear and undisputed that Etheridge took every conceivable precaution to prevent Sandler from learning of the existence of the 1492 Co. agreement. The law in Virginia seems clear (and logical) that when the conduct of the agent is such as to raise a clear presumption that he would not communicate the facts in controversy to the principal; or where the agent, acting nominally as such, is really acting for his own interest and adversely to his principal; *or* had a motive to conceal the facts from his principal, then the knowledge of the agent will not be imputed to his principal. In this instance all *3* of the circumstances existed, and, thus, the knowledge of Etheridge could not properly be imputed to Sandler, even if Etheridge were found to be Sandler's agent.

While the evidence discloses that Duckworth was a partner (or more correctly a co-shareholder) with Sandler in Oceanpoint Properties, a corporation, he also was at times involved in real estate matters with Sandler having no relationship to Oceanpoint Properties. Both he and Sandler were involved in real estate matters in which, and as to which, the other had no interest. Particularly Sandler, having greater financial resources than did Duckworth, was involved in numerous real estate transactions and ownerships not including Duckworth. The evidence is clear that Duckworth brought the subject property to the attention of Sandler, but also brought the property to the attention of at least one other person. He was not a licensed real estate agent or broker, and was not serving as the agent of either Etheridge or Sandler. Both Etheridge and Sandler were friends and business associates of Duckworth and he did *hope* that Sandler might allow him to become a "part of the deal" if Sandler purchased the property. At the request, express or implied, of Etheridge, he did not disclose the 1492 Co. agreement to Sandler because he was led to understand that if Sandler had such knowledge, he, Sandler, would not purchase. The Court finds from the evidence that Duckworth was not the agent of Sandler; but, again, even if it had found otherwise, Duckworth's knowledge is not imputable to Sandler. Duckworth hoped for inclusion in the "deal." This was a hope that could be realized only if Sandler purchased, and Duckworth understood that Sandler would not purchase if he had knowledge of the 1492 Co. contract. Thus Duckworth, too, was acting in his own interest and had a motive to conceal the facts from Sandler, and did in fact conceal his knowledge from Sandler.

Plaintiffs next argue that a finding that Sandler had neither actual nor imputed knowledge of the 1492 Co. agreement does not necessarily indicate that Sandler is a bona fide purchaser for value without notice. They cite the case of *Wasserman v. Metzger*, 105 Va. 744 (1906), as authority for the proposition that Sandler was not a *complete* purchaser in that of the $675,000 purchase price involved, only some $101,742.08 has been paid in cash and the remainder was represented by the *assumption* of deed of trust indebtedness ($403,741.12) and the delivery of a promissory note ($169,000.00). (While the contract appears to contemplate assumption, the conveyance is made subject to the liens).

The Court, in *Wasserman*, based its decision on the finding that Mrs. Wasserman had acquired *equitable* title only (and not legal title) to the property in question. At page 751, the Court, in *Wasserman*, held:

> Mrs. Wasserman was, therefore, not a complete purchaser but the purchaser of a mere equity which had not been paid for, and she had no right to call for the legal title when she received notice of the fraud of Morris and the irregularity in the trustee's sale. A payment after notice would give her no right to call for the legal title, for whatever she does to protect her title after notice is done *mala fide* and does not avail. . . .
>
> The general rule is that the purchaser of a mere equitable title must take the place of the person from whom he purchases. He stands in his vendor's shoes. He gets the title of his vendor and nothing more.

In the identical sense with Wasserman, Sandler is the purchaser of a mere equity, for *legal* title is vested in the Trustee(s) named in the earliest of the deed of trust liens *assumed* by him; and in the identical sense, he, too, like Mrs. Wasserman has paid only a fraction (less than 1/6 by Sandler, exactly 1/6 by Mrs. Wasserman) of the purchase price, and Sandler would have no right to call for the legal title by payment of the liens and promissory note after notice (if we assume for this purpose that the 1492 Co. agreement was a valid contract relating to the same property).

The Wasserman decision seems to make clear, however, that the holding, that *actual payment* is essential to constitute one a *complete purchaser*, is qualified by the language "unless the parties are so circumstanced that a court of equity cannot prevent their [promissory notes] enforcement." (Bracketed words added.) *Wasserman* at 748.

This Court is of the opinion that the evidence adduced is not sufficient to enable it to determine whether the parties are so circumstanced that a court of equity cannot provide adequate protection. The Court is, also, of the opinion that further effort to hear evidence in this

cause on a piece-meal basis is inappropriate and in the interest of none of the parties.

There, of course, remains as an issue for determination, also, whether the 1492 Co. agreement was a valid contract relating to the same property purchased by Sandler. Mention of this issue leads us to consideration of Sandler's Motion and Supplementary Motion for Summary Judgment.

Sandler argues first that the 1492 Co. agreement of purchase is not of a nature that a court of equity should decree its specific performance. Specifically he points to the admitted fact that the owner of a significant portion of the property described in the purchase agreement is not a party to the agreement. That owner, Wolfsnare Associates, Inc., owned 15 lots included in the property description. Another Judge of this Court has already dismissed Count IV of the Second Amended Bill of complaint on the basis that the Court will not make and then enforce a contract; and, thus, would not compel performance as to a portion only of the described property. Sandler argues that enforcement under any of counts I, II and III should be denied for the same reason.

Sandler's argument overlooks the contention of plaintiffs that the evidence will disclose that Etheridge was the sole officer and director of each of the 4 owning corporations; and that none of the corporations, in truth, had an existence separate and distinct from Etheridge in that, amongst other contentions, no capital contribution had ever been made to any of the corporations.

If the evidence were to show that the corporations were in fact "shells" only, and true ownership of the properties was in Etheridge, a basis for decreeing specific performance in equity *might* be found to exist.

Sandler further argues in support of his Motion for Summary Judgment that the undisputed and conceded evidence now discloses that plaintiffs have a complete and adequate remedy at law; and, in fact, have pending in this Court a law action seeking to enforce that legal remedy.

Sandler notes that plaintiffs by contract dated June 1, 1984, [subsequent to the institution of this action on April 9, 1984] with ERA Oglesby/Arnhold Realty, Ltd., granted to that firm an option to purchase the entire property which is the subject matter of this suit for a profit to plaintiffs of $100,000.00. He argues that

this chancery proceeding should now be dismissed and cites as authority the holding in *Bank v. Isaacson*, 158 Va. 609, 164 S.E. 520 (1932). That holding relates to a situation where the alleged ground for equitable relief was only colorable and was employed as a mere pretext for bringing a law action on the chancery side of the Court. Such is clearly not the situation here, for Sandler's argument is based on a remedy at law which did not exist when this cause was filed.

The general rule is that once chancery has acquired jurisdiction of the parties and of the subject matter, it will retain jurisdiction and grant relief even though its ultimate relief may be limited to a recovery available at law.

In connection with the Sandler argument on this point, it should be noted (1) that while plaintiffs admit the option to ERA Oglesby/Arnhold Realty, Ltd., they contend that it is void as a violation of the rule against perpetuities; and (2) that the "complete and adequate remedy at law" available to plaintiffs may be more apparent than real.

At law, the remedy of damages might well be limited to a judgment against the corporate sellers in the contract with 1492 Co. V. A. Etheridge, Jr., in his letter of September 11, 1984, to plaintiffs (in care of their attorneys of record) advised plaintiffs that these corporations "have little or no assets at this time." Should plaintiffs obtain judgment against Mr. Etheridge, individually, he notes in the same letter that he "could be considered 'judgment proof'." He further states that he "own(s) no real estate solely in my name" and has "a host of judgments already recorded against me, and what assets I may have are pledged to cover existing indebtednesses."

For the reasons herein indicated (and the failure to address other issues raised by the parties should not be taken as a ruling thereon), the Court is of the opinion that the Motions for Summary Judgment should be denied as there are a number of material factual issues in dispute; and this matter should be promptly referred for hearing to a Commissioner in Chancery of this Court.