Argued June 23, affirmed November 15, 1921.

# RE ADJUDICATION OF THE WATERS OF ROGUE RIVER.

## PACIFIC PLACER CO. *v.* SPARLIN ET AL.

### (201 Pac. 724.)

**Waters and Watercourses—Prior Appropriation for Hydraulic Mining may not be Encroached upon During Summer Season for Irrigation Purposes.**

1. The right of a prior appropriator of waters from a stream for mining use, which is a public necessity, cannot be encroached upon through the summer season by subsequent appropriation of waters for irrigation purposes, in view of Sections 5789, 5716, Or. L., where such waters are reasonably necessary for hydraulic mining.

**Waters and Watercourses—Objection to Informality in Exception to Determination of Water Board cannot be First Made upon Appeal.**

2. Where the parties were heard on exceptions to determination of water board, an objection to an informality in the entitling of an exception comes too late when first made on appeal, where appellants were not misled or injured.

From Josephine: F. M. CALKINS, Judge.

Department 2.

This is an appeal by Ira F. Sparlin and other water users of the waters of Williams Creek, a tributary of Rogue River, from a decree adjudicating the waters of Rogue River and its tributaries as against the successors in interest of the estate of J. T. Layton, deceased.

About 1860 the predecessors in interest of J. T. Layton appropriated the waters of Williams Creek for

---

1. On effect of prior appropriation of water for mining purposes, see note in 22 L. R. A. (N. S.) 281.

On the question of right as between appropriator above and junior appropriator below mill, during period when water not used by mill, see note in 30 L. R. A. (N. S.) 615.

On right of prior appropriation of water at common law and under special statutes or customs, see note in 30 L. R. A. 665.

mining purposes and constructed a ditch, now known as the lower Layton ditch, from Williams Creek, which was used for mining not far distant from the creek. About 1866 this ditch was constructed to Farris gulch, and there used, to its full carrying capacity for hydraulic mining purposes. The ditch is eighteen miles in length, four and one-half feet in width at the top, and three feet in width at the bottom. In 1876 Layton appropriated additional water from the stream and began the construction of another ditch which was completed about 1878, at an expense of about $10,000. This ditch is twenty-nine miles in length, and is known as the upper Layton ditch, being used for mining purposes on Farris gulch. Mr. Layton began his mining operations by using the waters as early as possible in the winter season, and continued each season as long as it was possible to get sufficient water. Sometimes the waters lasted until in August, and in other years until in September or the first of October, depending upon the snowfall in the mountains. The lower ditch goes dry in the early part of July, but the upper ditch furnishes water sometimes as late as the latter part of October. or the first of November. The waters have been used continuously as late in the season as there was sufficient water for hydraulic mining.

The source of these ditches is high up in the mountains where the snow falls to a great depth and freezing weather often predominates until in February or March, making mining earlier in the season impossible. It appears they usually clean out the ditches in the latter part of the winter and commence mining in March. There is no question in the case, as to the prior right of the successors in interest of J. T. Layton to the use of the waters of Williams Creek.

The state water board adjudicated as follows:

"Estate of J. T. Layton, deceased. Priority—1860, 12.00 sec. ft., hydraulic mining Nov. 1 to July 1, Lower Layton Ditch.

"Estate of J. T. Layton, deceased. Priority—1876, 8100 sec. ft., hydraulic mining, Nov. 1 to Aug. 1, Upper Layton Ditch.

"Estate of J. T. Layton, deceased. Priority—1876, 2.00 sec. ft., Aug. 1 to Nov. 1, Upper Layton Ditch.

"Water to be taken from East Fork of Weaver Fork and Glade Fork, tributaries of East Fork of Williams Creek.

"Place of Use—Patented mineral lands at Farris Gulch, Jackson County, Oregon."

The Layton estate being dissatisfied with the board's determination petitioned for a rehearing, and also filed exceptions, and asked that the other water users on the stream be brought into the proceeding for the purpose of a re-examination of the matter. In this proceeding numerous land owners and other users in the Williams Creek valley intervened and contested the right of the Layton estate to the amount of water awarded, and as to the season of the mining use.

It developed from the testimony that when Layton commenced using the water at Farris gulch he commenced mining in November and continued through the winter and as late in the summer as water was available. The loss by seepage and evaporation in the summer in conducting the water through the lengthy ditches was about 50 per cent. Layton continued mining in winter and summer for about ten years, until he paid all his indebtedness. Then, as the mining during the winter season was unprofitable, it was discontinued. Upon the rehearing, the

state water board declined to modify its determination.

The Circuit Court decreed the successor in interest to the Layton estate a prior right, through the lower ditch to twelve second-feet of water, from November 1st to July 1st, and through the upper ditch eight second-feet of water from November 1st to September 1st; and two second-feet from September 1st to November 1st.

It is indicated in the record that the state engineer's office measured the water carried in the Layton ditches, but the measurements are not contained in the record.                    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. H. D. Norton.*

For respondents there was a brief over the name of *Messrs. Colvig & Williams,* with oral arguments by *Mr. Gus Newbury* and *Mr. Fred A. Williams.*

BEAN, J.—It is contended on behalf of appellants, upon this appeal, that the Layton estate is diverting through its ditches an amount of water in excess of that required to carry on its mining operations.

It is shown by the testimony that the water in the lower Layton ditch is used for by-wash, or for carrying away the debris from the mine, and not for sluicing. The water carried through the upper ditch is impounded in a reservoir during the night and used for hydraulic mining during the next day. In order to operate the mine it is essential to use all of the water that can be obtained through these ditches, and more could be used if it were available. Testimony upon this point is practically uncontroverted. The testimony supports the findings of the court.

It is assigned by appellants that: "The court erred in decreeing to the Estate of J. T. Layton, deceased, the right to the use of any of the waters of Williams Creek or its tributaries for mining purposes, during the irrigation season, or for any period of time other than from October 1st of any year to May 15th of the succeeding year."

1. It is urged on behalf of appellants that the use of the waters for mining operations should not be curtailed during the winter season when there is a surplus of water, and used therefor during the irrigation season, or in effect the water should not be used for mining purposes later in the year than May 15th.

The use of water of the lakes and the running streams of the State of Oregon for the purpose of developing the mineral resources of the state is declared to be a public and beneficial use and a public necessity, and the right to divert such unappropriated waters is granted by our statute: Section 5789, Or. L.

The privilege claimed by the appellants would intrench upon the vested right of the owners of the Layton ditches. However laudable may be the purposes of the appellants, and however great may be their necessity to obtain the waters of Williams Creek for irrigation purposes, it is one of the fundamental principles of our Water Code that "subject to existing rights, all waters within the state may be appropriated for beneficial use," as provided by the statute and not otherwise. The statute further declares: "but nothing herein contained shall be so construed as to take away or impair the vested right of any person, firm, corporation, or association to any water": Section 5716, Or. L.

The right of a prior appropriator of water is paramount. The use of the water for hydraulic mining by Layton and his successors in interest is shown to be reasonably necessary for the project fairly within contemplation at the time of the appropriation: *Andrews* v. *Donnelly,* 59 Or. 138 (116 Pac. 569); *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410, 430 (119 Pac. 731).

2. The appellants criticise the exceptions filed on behalf of the Layton estate and considered by the Circuit Court. The exceptions are entitled, "In the Circuit Court of Oregon for Jackson County." It appears they were filed with the state water board, answered by the appellants, and sent to the Circuit Court with the record. We find no objection to this manner of proceeding made at the time of the hearing in the trial court. The parties were heard upon the exceptions. The objection to the informality is now too late. It does not appear that the appellants were misled or injured.

Complaint is made by appellants because the Circuit Court awarded the Layton estate "water of the East Fork of Williams Creek, through the upper and lower Layton ditches," instead of confining the use of water from the tributaries or forks of the east fork of Williams Creek, as described in the record of the determination of the water board. The record here does not inform us that any material change in the place of intake was intended or made by the Circuit Court. The map of the Layton ditches mentioned in the testimony is not before us. We have only a printed topographical map of the section of the country in which the ditches are located. We are unable to distinguish any material difference in the

two descriptions. It appears the water is to be taken to the mines by means of the Layton ditches as constructed.

After a careful reading of the testimony, and examination of the record, we affirm the decree of the lower court.                                    AFFIRMED.

BURNETT, C. J., and BROWN, J., concur.

JOHNS, J., resigned after argument.