Argued November 1, modified and remanded November 30, 1960

# OAKES ET AL v. DICKSON
### 357 P. 2d 385

*D. S. Denning, Jr.,* and *Wm. F. Schroeder,* Vale, argued the cause for appellants. On the briefs were Lytle, Schroeder & Denning, Vale.

*Martin P. Gallagher,* Ontario, argued the cause for respondent. With him on the brief was Cecelia P. Galey, Ontario.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and KING, Justices.

GOODWIN, J.

This is an appeal from a decree which dismissed a suit for injunctive relief and damages arising out of a controversy over irrigation water in Malheur County.

The plaintiffs are owners of ranch lands for which they hold rights to certain water. The defendant, a

neighboring landowner, has contructed improvements on his own land in or near the bed of a stream and is now taking water for his own use. The plaintiffs claim a prior right to at least a part of the water now being taken by the defendant. The parties will be referred to as Oakes, the principal plaintiff, and Dickson, the defendant.

The trial court considered some 674 pages of transcribed testimony and a substantial number of exhibits. We have carefully examined the record. We will not recite the details of the topography involved nor the complete testimony with reference to the flow of the stream in question during a period of more than 40 years. It is sufficient to point out that there was a conflict in the testimony on only one important point.

We will first consider the facts which were either agreed upon or with reference to which there was no substantial contradiction.

Bridge Creek, the stream in question, is a short mountain stream which flows seasonally during the late winter and spring in a generally west-to-east direction. The flow of the stream commences in a spring on the slope of Ironside Mountain, and is sustained by the annual runoff of melting snow. There are also minor additions of underground waters coming to the surface in or near the bed of the stream. All witnesses agreed that, except for unusually wet years, the stream is dry by the last of June. In wet years, it sometimes runs through the month of July. Once in forty years there was water in August.

A second stream, concerning which testimony was taken, is called High Horn Creek. The second stream, as the evidence developed, had no material bearing on the case and will not be referred to again.

Bridge Creek was included within the subject of

a decreed water right recorded in 1916. The rights of Oakes, for the purposes of this case, date from that decree. On this there is no dispute. The improvements constructed by Dickson were made in accordance with a permit granted to him in 1948 by the State Engineer upon application made in 1947. Oakes filed objections to the Dickson application. These objections were disregarded, but Oakes did not appeal the Dickson permit. Whatever rights Dickson acquired in 1948 were junior to and subject to the prior right of Oakes. *In re Waters of Rogue River*, 102 Or 60, 201 P 724. There is no dispute on this. The dispute concerns Dickson's practices in the exercise of his rights under the 1948 permit.

The Dickson improvements were constructed at a cost of $9,000. Work was commenced immediately upon the granting of the permit. Dickson has used his ditches and other improvements continuously to date.

The heart of the controversy is whether Dickson, by means of the improvements he constructed, is taking more water than he is entitled to take. Most of the testimony in the record deals with the views and opinions of the parties and their witnesses on this question. There was no evidence of measurements taken by or for either party. The best that can be said for the evidence is that Oakes established that Dickson had taken some water from Bridge Creek, in amounts unknown, and at times not established.

With the record in this condition, it is appropriate to consider the prayer of Oakes' complaint:

1. For injunctive relief to prohibit Dickson from interfering in any manner with the waters of Bridge Creek and from diverting or impounding the same;

2. A demand that the improvements constructed by

Dickson be removed and the terrain be restored to its pre-1948 condition;

3. Damages for loss of crops in the sum of $2,000.

The improvements constructed by Dickson consisted mainly of the relocation of the creek bed around an area of natural springs formerly marked by willow growth in or near the original bed of the creek. After diverting the creek around the spring area, Dickson constructed dams and ditches to bring the flow of such spring water as he might develop into his own system of irrigation. The relocation of the stream bed from a point above Dickson's works to a point below them was intended to preserve the prior rights of Oakes to the natural flow of the stream. These improvements, as we have noted, were authorized by the State Engineer over the protest by Oakes that such improvements would interfere with Oakes' prior appropriation.

The trial court took the position that the determination by the State Engineer was *res judicata*, and that since no appeal had been taken, Oakes had no standing to litigate the propriety of the 1948 permit granted to Dickson. Thus far, the trial court was correct. The then applicable statute, now found in ORS 537.200, provided for judicial review. Oakes' failure to appeal made the State Engineer's order final. *In re Waters of Walla Walla River*, 141 Or 492, 16 P2d 939.

The decree entered by the trial court implied that the State Engineer's action was also final with reference to the practices complained of in the present suit. The trial court also expressed the opinion that the expenditure of $9,000 by Dickson in making his improvements in reliance upon his 1948 permit and the subsequent failure by Oakes to appeal the Engineer's action justified an estoppel.

Our examination of the record indicates that the

issues of *res judicata* and estoppel, relied upon by Dickson at the trial and accepted by the trial court, were not responsive to the real issue in the case.

■ Dickson's 1948 permit expressly saved any prior rights Oakes may have had. To the extent that Dickson may later have exceeded the terms of his permit, the adjudication by the State Engineer granting the permit could not have been *res judicata* because no such question was before that officer.

■ Likewise, the defense of estoppel was not available. The expenditure of $9,000 or any other amount in developing a water right Dickson did possess would not establish grounds for estoppel in a suit to prevent conduct exceeding that right and detrimental to a prior right vested in Oakes. Even if Oakes had remained silent, which he did not, "[m]ere silence, or * * * 'passive acquiescence,' does not by itself create * * * an estoppel." *Fraser v. Portland*, 81 Or 92, 95, 158 P 514, 9 ALR 614; *City of Molalla v. Coover et ux*, 192 Or 233, 249, 235 P2d 142.

The real question was whether or not Dickson in fact exceeded the terms of his 1948 permit. On this point there was the only major conflict in the evidence. The trial court could properly have found that the water taken by Dickson, with minor exceptions hereafter noted, came from newly developed sources authorized by the terms of his 1948 permit. If so, the taking of newly developed water did not infringe upon the prior rights of Oakes. Oakes was entitled to a certain appropriation out of the flow of Bridge Creek in its natural condition, but was not entitled to the flow of ground waters later developed by Dickson under his permit.

■ While a court may know that underground waters in a stream bed will tend to support the surface

flow of a stream, particularly in a desert region, the plaintiffs had the burden of producing some evidence that Dickson's development of spring water had decreased the downstream volume of the stream by some measurable degree. The evidence was wholly unsatisfactory on this essential point. The main trend of the proof was that the creek, downstream where it reached the lands of the plaintiffs, was usually dry by the beginning of haying season during the many years before Dickson constructed his works. The evidence also showed that the newly developed waters in the Dickson system ran the year round. There was no evidence that the waters developed by Dickson would have supported the surface flow in an amount that would have reached the lands of the plaintiffs if Dickson had made no improvements.

■ With reference to the prayer of the complaint which demanded that Dickson's extensive improvements be removed and the land be restored to its natural condition, there was ample ground to deny relief without reference to estoppel. The evidence would have justified the trial court in finding that Dickson's improvements, if properly used by him, would not interfere with the prior rights of Oakes. The trial court made no such special findings, because its decision was grounded upon the defenses of *res judicata* and estoppel. This court, therefore, has no way of knowing what the trial court actually found. We find from the record, however, that there is no justification for the prayer of the complaint which demands restoration of the natural terrain, and relief on that score was properly denied.

There was a failure of proof to justify an award of damages. The only evidence of damage was speculative. This prayer for relief was also properly rejected.

The trial judge came to the conclusion that Oakes was entitled to no relief at all, and dismissed the complaint. We believe that the evidence supported the trial court's decision in all but one particular, which requires modification of the decree.

There was uncontradicted evidence that Dickson had, prior to the commencement of the suit, diverted Bridge Creek into an artificial channel. This diversion was to cause the previously appropriated waters of the stream to by-pass Dickson's development of spring water in order to protect Oakes' prior appropriation. At the point of this diversion, Dickson had constructed a head gate which he could adjust, if he so chose, to return the entire flow of the creek to its old channel for his exclusive use.

The evidence established that all of the water in Bridge Creek (exclusive of that supplied by the springs which Dixon developed) was necessary to satisfy Oakes' prior appropriation during the irrigation season. Any turning of the waters of Bridge Creek into Dickson's ditch during the irrigation season took water in excess of the amount granted Dickson in his 1948 permit.

■ There was evidence that Dickson had not always been careful to keep the waters of the creek out of his artificial system during the irrigation season. There is no doubt that Dickson, under his 1948 permit, was entitled to all excess water, not required by the prior appropriation of Oakes, including the right to store flood water during the early spring before the irrigation season began. The evidence showed, however, that Dickson permitted the stream to flow into his system after the irrigation season had started. Upon at least one occasion Dickson left the head gate open for a substantial period. There was other evidence

which tended to show that if Dickson did not intentionally turn the stream into his own irrigation system, he permitted natural erosion in and about the diversion channel to accomplish the same result. Since Dickson had changed the status quo, he had a duty to maintain the new system so as to leave the prior appropriation of Oakes undisturbed. Oakes was entitled to an injunction assuring future respect for his 1916 priority.

In failing to allow Oakes any relief at all, the trial court's decree allowed a substantial cost bill to fall upon the plaintiffs.

The plaintiffs having showed an interference, and threat of future interference, with their water rights, the decree must be modified to allow an injunction in accordance with the views expressed herein.

On receipt of the mandate, the trial court should enter a modified decree which will:

(1) Deny all the specific affirmative relief demanded by the plaintiffs; and

(2) Enjoin Dickson and his successors in interest from causing or permitting any obstruction, man-made or otherwise, to block the by-pass channel of Bridge Creek during the irrigating season, and from using the head gate to divert water from Bridge Creek in excess of the amount to which Dickson is entitled under his 1948 permit; and

(3) Confirm the rights of the parties according to the terms of the decree of June 6, 1916.

Modified, with costs to the plaintiffs.