## CIRCUIT COURT OF ARLINGTON COUNTY

Bio-Medical Applications
of Arlington, Inc., et al.

v.

James B. Kenley et al.

### Case No. (Chancery) 35056

By JUDGE WILLIAM SHORE ROBERTSON

June 4, 1984

On May 21, 1984, the Court heard argument on the plaintiffs' Motion for Temporary Injunction filed April 6, 1984 and took the matter under advisement. After considering the argument of counsel, the pleadings and evidence filed herein together with the briefs filed by counsel, it is my opinion that this motion must be denied.

Pursuant to Va. Code Section 32.1-102.7, the plaintiffs seek judicial review of the administrative decision

of the Virginia State Health Commissioner (Commissioner) dated March 6, 1984 denying Bio-Medical Applications of Arlington, Inc.'s (NOVA) request for a Certificate of Need (CON) to expand their renal dialysis facility in Arlington, Virginia and the granting of a competing request to Fairfax Dialysis-CAPD, Inc. (Fairfax) for a CON to establish a new renal dialysis facility in West Springfield, Va. Collateral injunctive and declaratory judgment relief is also sought. In opposition, Fairfax has filed a demurrer and Motion to Dismiss challenging this Court's jurisdiction to entertain the plaintiffs' bill and by way of supplementary relief both defendants seek to have this Court strike the plaintiffs' Notice of Appeal and Bill of Complaint. In addition, the Commissioner seeks to dismiss Mrs. Elizabeth Altenbach as a party plaintiff in this case but argues that Fairfax should not be dismissed as it is a "necessary party" to the adjudication of this case.

As a threshold issue, the Court must decide whether it may enter a temporary injunction to retain the *status quo* where its jurisdiction has been challenged and is in doubt. As has been pointed out to counsel, this Court has consistently held that a Virginia Court should not adjudicate an issue where it is without jurisdiction. Since the jurisdictional issues here are both complex and novel, I have expressed a belief that this Court should grant injunctive relief only after being assured of jurisdiction. In response, counsel for the plaintiffs have urged upon the Court the case of *United States* v. *United Mineworkers of America*, 330 U.S. 258 (1947), and its progeny, *Eastern Associated Coal Corp.* v. *Doe*, 220 S.E.2d 672 (W.Va. 1975). However, these cases are not Virginia authorities and are decided upon facts of far greater exigency. However, the Court's research has located Virginia authority for the same proposition and under less urgent facts.

In *Iron City Savings Bank* v. *Isaacsen*, 158 Va. 609 (1932), the Supreme Court of Virginia noted that a court of chancery has power to preserve the status quo while it attempts to ascertain whether it can acquire jurisdiction.

> The potential jurisdiction of a court of chancery, when properly invoked, is sufficient to sustain the exercise of the power of the

court to do all things necessary or proper to perfect its actual jurisdiction and to preserve the *status quo* while so doing; as for instance, by granting a temporary injunction. *Id*. at 624-45.

However, in the absence of any statute restricting the power of the court to do so, when personal service had been gotten on the corporation and its president, the court would have had, by virtue of its potential jurisdiction, the power to grant a preliminary temporary injunction against them to preserve the *status quo* while proper steps were being taken to acquire jurisdiction of the person. . . or of the *res*. *Id*. at 634-35.

Having determined that under Virginia law this Court has the power to grant temporary injunctive relief pending a determination as to whether it has jurisdiction over the issues raised in this case, the standards by which the plaintiffs' motion will be evaluated must be determined. Despite the suggestion of counsel and the Court's bench comments on May 18, 1984, that the general law governing the granting of injunctive relief is controlling, further research and reflection reveals that this is not the case.

Va. Code Section 32.1-102.8B provides that, "[t]he Court may enter such orders pending the completion of the proceedings as are deemed necessary and proper." However, this basic law provides no standards by which such orders are to be entered. These standards are provided by the Administrative Process Act (Va. Code Section 9-6.14:1 et seq.) which has as an express purpose the supplementing of basic laws governing state agency procedures to decide cases. Va. Code Section 9-6.14:3A. Under that Act, Va. Code Section 9-6.14:18 provides that where, as here, the agency has declined to postpone the effective date of its decision:

The Court may, on proper application and with or without bond, deposits in Court, or other safeguards or assurances, as may be suitable, issue all necessary and appropriate process to postpone such effective dates or preserve

existing status or rights pending conclusion of the review proceedings if the Court finds the same to be required to prevent immediate, unavoidable, and irreparable injury *and* that the issues of law or fact presented are not only substantial but that there is a probable cause for it to anticipate a likelihood of reversible error in accordance with Section 9-6.14:17. (Italics added.)

These issues must be examined separately.

A. Is the injunction necessary to prevent immediate, unavoidable, and irreparable injury to the plaintiffs?

The principal thrust of the plaintiffs' argument on this point centers around their concern that if Fairfax is allowed to continue the construction of its facility or should the Court vacate or modify the Commissioner's decision under Va. Code Section 32.1-102.8B, at any subsequent comparative review before the Commissioner, Fairfax by virtue of their advanced development would be preferred. Despite comments by counsel, such a conclusion seems likely given the criteria for determining needs set forth in the basic law. Va. Code Section 32.1-102.3(B) 4, 7, 16, 17 and 19. The question of whether the Court will vacate or modify the Commissioner's decision has not, of course, been settled at this time although this proposition is discussed hereafter under paragraph B as a part of the "probable cause" issue.

B. Are the issues of law or fact presented substantial and is there probable cause for the Court to anticipate a likelihood of reversible error in accordance with Section 9-6.14:17?

Laying aside the jurisdictional issues which are now under advisement, the Court finds that the law and fact issues presented here are substantial. The plaintiffs' allegations of procedural and administrative law errors in both a statutory and constitutional context more than justify this conclusion.

The difficult part of this issue, however, is in determining whether there is probable cause for the Court to anticipate a likelihood of reversible error in accordance with Va. Code Section 9-6.14:17. This is so because although counsel have briefed and argued the merits of this issue, the Court is not presently in a position, due to the newness of this case and the Court's case

schedule to reach a decision as to the ultimate issue. However, the statute does not require the Court to find that there will be a reversal, but only "probable cause" of its likelihood. The term "probable cause" is not defined in the basic statute although it is generally recognized in the context of criminal law and the civil law governing malicious prosecutions. 21A M.J., *Words and Phrases*, "Probable Cause," p. 563. Black's Law Dictionary 4th Ed. Rev. (West, 1968), p. 1364, offers the following definition which is helpful:

> An apparent state of facts found to exist upon reasonable inquiry, (that is, such inquiry as the given case renders convenient and proper,) which would produce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged, or, in a civil case, that a cause of action existed.

Within these limitations, the Court will consider facially the "probable cause" of the plaintiffs' claim under Va. Code Section 9.6-14:17. In support of their claim that they have a strong chance of prevailing on the merits, the plaintiffs assert that the Commissioner violated the administrative law principle enunciated in *Ashbacker Radio Corporation* v. *FCC*, 326 U.S. 327 (1945), that mutually exclusive competing applications must be comparatively reviewed without a presumption that one application has been granted. However laudatory this principle may be, it must be noted that it rests upon the Supreme Court's interpretation of the requirements of the basic law which were controlling in that case. Further, contrary to the plaintiffs' assertions, it does not rest upon a constitutional premise that the denial of a comparative hearing and review is violative of the due process and equal protection requirements of the United States Constitution. As the Court notes in 66 S. Ct. at page 150:

> We do not think it is enough to say that the power of the Commission to issue a license on a finding of public interest, convenience or necessity supports its grant of one of two mutually exclusive applications without a hearing

of the other. For if the grant of one effectively precludes the other, the *statutory right* to a hearing which *Congress* has accorded applicants before denials of their applications becomes an empty thing. We think that is the case here. (Italics added.)

Because of the unavailability of statutory materials here, it is not possible for this Court to analyze the statutory law underguarding the cases cited by the plaintiffs in their memorandum in support of plaintiffs' Motion for Temporary Injunction, pp. 11-16. However, a reading of these cases suggest that in some instances they are based upon a statutory administrative scheme adopted in that state, whereas in others a judicially adopted *Ashbacker* doctrine is applied. In one case it would appear that such a doctrine is interpreted by a "fairness" standard. In any event, the states appear to have different approaches to their procedures in dealing with competing applications. 59 Va. Law Rev. 1143, 1171 (1973). (Note, of course, later research *could* reveal greater uniformity at the present time.) Counsel here suggests that the Virginia CON Rules and Regulations provide for concurrent review at all levels of the administrative process. Even though this point cannot be verified because counsel have not at this time made available those regulations, there appears to be no conflict here that this is true. However, while the applicable statutory scheme allows those opposed to the granting of a CON to appear and be heard, it does not provide for comparative review. Further, this Court does not deem it proper for it to judicially adopt the *Ashbacker* doctrine even though it might be good public policy. That matter must be left to the General Assembly of Virginia.

For these reasons, the Court cannot say at this time that there is a probable cause for this Court to anticipate a likelihood of reversible error. Counsel should be cautioned, however, that this view is quite preliminary and is limited only to an analysis of the injunction issue. It would by necessity be subject to change should further illumination be shed on the case as it develops.

In this case the numerous pre-trial issues which were raised by the pleadings and the argument and memoranda of counsel were taken under advisement by the Court. After doing so, the Court has researched conclusions of law which are set forth in the Summary of Discussion, *infra*.

Because of the complexity of the questions raised, the Court has summarized the facts and questions presented before its discussion which for convenience are set out as follows.

## Facts

Pursuant to Va. Code § 32.1-102.1, et seq., the plaintiff (hereinafter "NOVA") began the process of acquiring a certificate of need from the Commissioner of Health to expand its dialysis facility in Arlington. Fairfax Dialysis - CAPD, Inc. (hereinafter "Fairfax") and three other applicants also filed for certificates of need to build new, or expand existing, dialysis facilities in the same health services area that NOVA serves. Pursuant to § 6.05 of the Virginia Medical Care Facilities Certificate of Public Need Rules and Regulations (hereinafter "Con Rule § ---") the applications were reviewed concurrently. NOVA's certificate of need was denied by the Commissioner, while Fairfax's was approved. Pursuant to Va. Code § 32.1-102.6(F), informal and formal administrative proceedings followed the Commissioner's initial decision. The result of both proceedings was to affirm the Commissioner's decision.

Pursuant to Va. Code § 32.1-102.7, NOVA has appealed the decision to deny its application and grant Fairfax's competing application.

## Questions Presented

1. Whether, under Va. Code § 32.1-102.7, Arlington County is the proper venue for this action?

2. Whether Nova's notice of appeal and bill of complaint should be stricken because a foreign attorney signed them in violation of Va. S. Ct. R. 1A:4 (Vol. 11, 1984)?

3. Whether Nova's failure to file an assumed name certificate pursuant to Va. Code § 59.1-69 should preclude Nova from pursuing its action for equitable relief?

4. Whether named plaintiff Altenbach should be dismissed from the case due to a lack of standing?

5. Whether the demurrer of Fairfax should be sustained on any of the grounds enumerated therein?

## Summary of Discussion

1. Pursuant to Va. Code §§ 8.01-259, -261, -263 and 32.1-102.7 Arlington County is a proper venue for this action.

2. The failure of NOVA to have its notice of appeal and bill of complaint signed by a Virginia attorney (rather than a foreign attorney) does not necessitate a dismissal of the action.

3. NOVA's failure to file an "assumed name certificate" with the State Corporation Commission does not preclude NOVA from pursuing this action, so long as such a certificate is filed prior to the rendering of a final decree.

4. Elizabeth Altenbach has no standing pursuant to Va. Code § 32.1-102.7. Nor has she asserted any alternative grounds upon which standing could be predicated. Therefore, Ms. Altenbach will be dismissed in this case.

5. Fairfax has demurred to NOVA's bill of complaint on a number of grounds. It has not prevailed on any of the enumerated grounds.

## Discussion

1. *Whether Arlington County is the proper venue for this action?*

Fairfax, in its demurrer, alleges that Arlington County is an improper venue because Va. Code § 32.1-102.7 provides that one entitled to appeal an administrative decision "may obtain a review. . . by the circuit court of the county or city where the project is intended to be or was constructed, located or undertaken." Fairfax argues that while Arlington County may be the proper venue for a review of the NOVA project, it is not the

proper venue for the Fairfax project because the Fairfax project will be located in Fairfax County. Therefore, argues Fairfax, because venue is jurisdictional the suit cannot, in its present form, be heard in Arlington.

Fairfax's argument is not a correct analysis of the law of venue in Virginia. The venue provisions of Va. Code § 32.1-102.7 are not jurisdictional in nature. Instead, the provisions of Va. Code § 8.01-258-265 apply, thus making venue non-jurisdictional.

Va. Code § 8.01-259 evinces a clear legislative intent that with the exception of the actions stated therein, all other venue provisions are and will be superseded by Va. Code § 8.01-257, et seq. Section 8.01-259 provides:

> Section 8.01-259. *Applications.* Nothing in this chapter shall apply to venue in the following proceedings:
> (1) Writs of quo warranto;
> (2) Suspension or disbarment of attorneys;
> (3) Habeas corpus;
> (4) Tax proceedings, other than those in Title 58;
> (5) Juvenile and domestic relations district courts proceedings concerning children;
> (6) Domestic relations proceedings;
> (7) Adoptions; or
> (8) Injunctions.
>
> In all other actions, venue shall be in accordance with the provisions of this chapter, and, with respect to such actions, in case of conflict between the provisions of this chapter and other provisions outside this chapter relating to venue, all such other provisions are hereby superseded. (1977, c. 617.)

Unlike the situation of the Tort Claims Act the language of Va. Code § 32.1-102.7 does not possess language, such as "shall" or "must," which would indicate that the legislature intended this section to be mandatory and to take precedence over Va. Code § 8.01-261. Instead, it appears that in a case such as the one at hand, there

are really two preferred venues, Fairfax or Arlington, and, pursuant to Va. Code § 8.01-263, either venue is appropriate.

This conclusion is strengthened by the analysis, *infra*, of Fairfax's demurrer. Briefly, Fairfax contends that its application is beyond the review power of the circuit court. The conclusion reached, *infra*, is that the applications of both Fairfax and NOVA are within the power of the court. If that is the case, then the venue language of Va. Code § 32.1-102.7 cannot be read as jurisdictional because to do so would mean that in a case such as the one at hand, no *one* court could hear the dispute. Venue would lie in Fairfax and Arlington. Because venue would be *jurisdictional*, neither Fairfax-CAPD *nor* NOVA could waive it. Therefore, neither the Fairfax court nor the Arlington court could take cognizance of *both* applications. To the extent that the analysis relating to Fairfax's demurrer is correct in requiring a comparative review of both competing applications, then it would follow that the legislature could not have intended to create a venue requirement that would nullify the provisions relating to court review of administrative decisions.

2. *Whether the plaintiff's notice of appeal and bill of complaint should be stricken because they were signed by a foreign attorney in violation of Va. Sup. Ct. R. 1A:4?*

The defendants argue that the plaintiffs have failed to file a timely notice of appeal and bill of complaint because both of these documents were signed by an attorney not licensed in Virginia in violation of Va. Sup. Ct. R. 1A:4? Rule 1A:4 states, in part, that:

> Except where a party conducts his own case no notice or pleading required to be signed by counsel shall be accepted or filed by the clerk of any court of record unless such pleading or notice is signed by a member of the Virginia State Bar.

The heart of the defendants' argument appears to be the premise that a notice of appeal and bill of complaint signed by a foreign attorney is a nullity *ab initio. See, Joint Brief in Support of Appellees' Motion to Strike Notice of Appeal and Bill of Complaint* at page

4. Therefore, the defendants argue, the time period for filing the notice of appeal and bill of complaint has now passed, with no opportunity for the plaintiffs to amend their original papers or to refile them. It is, they argue, as if no action was ever filed.

Alternatively, the defendants appear to argue that the notice of appeal and bill of complaint should be stricken, in effect with prejudice, in order to vindicate the supposed public policy rationale behind Rule 1A:4. That rationale, according to the defendants, is to protect Virginia courts and parties against the unauthorized practice of law and to assure that pleadings have been verified by an officer of the Virginia courts.

There are several problems with the defendants' position on this matter which, when considered in conjunction with Virginia's rules and statutes relating to the correction of errors in notices and pleadings, would seem to militate against striking the notice of appeal and bill of complaint. These problems are difficult to articulate because they stem from the defendants' proclivity to base their arguments on untested basic premises.

First, it should be noted that for the purposes of analysis, the essential question to be initially addressed is what should be the consequences of a violation of Rule 1A:4? In essence, the defendants have asked the court to create and impose a sanction for the violation of Rule 1A:4 by the foreign attorney whose name appears on the notice of appeal and bill of complaint. The sanction to be imposed is the dismissal, with prejudice, of the plaintiffs' action. Yet, the defendants cite no authority upon which to base the creation and imposition of such a penalty. All of the Va. S. Ct. Rule 5 and Rule 2A cases cited by the defendants deal with situations in which *no* filing was made prior to the expiration of the time limit involved. They have cited no authority for the proposition that the notice and bill of complaint should be treated as a nullity. Instead, there appears to be no persuasive reason to prohibit the plaintiffs from amending the notice and bill so as to correct the signatures therein, despite the fact that the original time limits have now run.

Time requirements for the filing of an appeal and statutes of limitation for the bringing of an action are analogous in their purpose and effect. The purpose of both of these requirements is to compel the exercise

of right of action (or appeal) within a reasonable time so as to avoid surprise and prejudice to the defendant (or appellee). *Truman* v. *Spivey*, 225 Va. 274, 279, 302 S.E.2d 517 (1983) (statutes of limitation); *Avery* v. *County School Board*, 192 Va. 329, 64 S.E.2d 767 (1951) (purpose of Rule 5:6, notice of appeal); F. James and G. Hazard, Civil Procedure § 5.7 (1971).

> Purpose of the specific time limit is not to penalize the appellant but to protect the appellee. If the required papers are not filed within the time limit, the appellee is entitled to assume that the litigation is ended, and to act on that assumption. *Avery* v. *County Board, supra,* p. 333.

The interests of the defendants were protected by the filed notice of appeal and bill of complaint. The primary purpose of the rule requiring notice having been fulfilled, there is no compelling reason to prohibit an amendment to correct the error in the signature. It should be noted that the prime purpose of statutes and rules which allow for amendments is to facilitate the fair decision of cases on the merits. These rules and statutes are to be liberally construed to further their remedial function and serve the ends of justice. *Dillow* v. *Stafford*, 181 Va. 483, 489, 25 S.E.2d 330 (1942). Virginia Supreme Court Rules 1:8 and 1:9 are specifically designed to allow courts to permit amendments to pleadings in order to get to the merits of the case. In fact, former Va. Code § 8-119, which was repealed as duplicative of Rule 1:8 (see Revisor's Notes to § 8.01-271), stated this point explicitly:

> Section 8-119. *Amendment of pleadings; immaterial errors or defects.* - In any suit, action, motion or other proceeding the court may at any time in furtherance of justice, and upon such terms as it may deem just, permit any pleading to be amended or material supplemental matter be set forth in amended or supplemental pleadings. The court shall, at every stage of the proceedings, disregard any error or defect which does not affect the substantial rights of the parties. If substantial amendment

is made in pursuance of this section, the court shall make such order as to continuance and costs as shall seem fair and just.

Amendments to pleadings which do not add a new claim or cause of action are routinely held to relate back to the original date of filing in order to avoid the bar of the statute of limitations. *Dillow* v. *Stafford*, *supra*.

Defendants argue that the only way to give effect to Rule 1A:4 is to strike the notice of appeal and bill of complaint. However, it would appear that several points have been overlooked. First, and perhaps foremost, Rule 1A:4, by its terms, is directed at the clerk of the particular court involved. The rule directs *the clerk* not to accept or file the notice or pleading. Had this admonition been followed, the plaintiffs could have remedied the defect simply and immediately.

Most importantly, there are other methods available to the Commonwealth by which to enforce the statutes and rules relating to foreign attorneys. For example, Va. Code § 54-44 makes the unauthorized practice of law a misdemeanor. In addition D.R.3-101, Va. Code of Professional Responsibility, provides that "A lawyer shall not aid a non-lawyer in the unauthorized practice of law." A "non-lawyer" includes a foreign attorney "not duly licensed or authorized to practice law in the Commonwealth of Virginia." See, Definitions, Unauthorized Practice Rules and Considerations, § B. Thus, it would seem that there are other options, short of precluding the client from litigating its claim, for vindicating the public policy embodied in Rule 1A:4.

Finally, one can plausibly argue that to the extent that a notice of appeal is required, it may not be necessary for it to be signed at all, much less by a Virginia attorney.

The parties to this action have assumed that Va. S. Ct. Rules 2A:1 et seq. apply to this case and that, therefore, a *signed* notice of appeal must be filed within 30 days of the final administrative decision, (*See* Rule 2A:2), and that a *signed* petition for appeal must be filed within 30 days following the filing of the notice (*See* Rules 1:3 and 2A:4). *See*, *Motion to Strike Notice of Appeal and Bill of Complaint* at 2. However, based

on two recent Supreme Court of Virginia cases it would appear that Rule 2A *does not* apply to the case at hand.

First, it should be noted that Va. Code § 9-6.14:16 provides, in part, that any person with standing:

> shall have a right to the direct review thereof either (i) by proceeding pursuant to express provisions therefor in the basic law under which the agency acted or (ii), in the absence, inapplicability, or inadequacy of such special statutory form of court review proceeding, by an appropriate and timely court action against the agency as such or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia.

In *Commonwealth* v. *County Utilities Corp.*, 223 Va. 534, 290 S.E.2d 867 (1982), the utility companies involved had appealed to the circuit court for review of various actions by the State Water Control Board. On appeal to the Supreme Court, the Board argued that the circuit court should have dismissed the utilities' appeal because they had failed to file a petition for appeal within 30 days of filing the notice of appeal, as required by Rule 2A:4. The Supreme Court held that the basic law (Va. Code § 62.1-44.2 et seq.) contained "a detailed procedural scheme for judicial review of actions by the Board. . . . Thus, its procedures set out in the basic law did not require that a petition for appeal be filed at all. Thus, said the Court, the utilities' failure to file a petition within 30 days of the notice of appeal was of no consequence. *Id.*

In *Forbes* v. *Kenley*, 227 Va. 55, 227 V.R.R. 63 (1984), the Supreme Court reversed the decision of the circuit court which held that the petitioner's appeal from a decision by the State Health Commissioner was time-barred. The Commissioner had demurred in the circuit court on the ground that the petitioner had failed to file a timely notice of appeal as required by Va. Code Section 9-6.14.16 and Rule 2A:2. The circuit court sustained the demurrer and the petitioner appealed.

On appeal, the petitioner argued that he had proceeded under the newly enacted Va. Code § 32.1-164.1, rather than Va. Code § 9-6.14:16. Therefore, argued the petitioner, the time requirements of Rule 2A:2 did not apply. The

Commissioner argued that even if the petitioner could take advantage of Va. Code § 32.1-164.1 (which took effect *after* the petitioner's right of appeal to the circuit court had arisen), Va. Code § 9-6.14:16 and Rule 2A would still apply because the petitioner had not shown that Section 32.1-164.1 provided an adequate procedure. *Id*. at 69.

Section 32.1-164.1 read, at the time, as follows:

> Section 32.1-164.1, *Appeals from denials of septic tank permits.* After exhausting his administrative remedies, a person subject to an adverse ruling by the Board shall have the right to appeal to the circuit court in the jurisdiction where all or part of the site of the septic system is located for a hearing before the judge of said court.
>
> The court shall consider all relevant evidence. If the court, after hearing, reverses the decision of the Board, it may do so upon such terms and conditions, including a probationary period, as may be fair and just under all of the circumstances. The decision may be recorded in the land records of the clerk's office of such court so as to be binding notice to the public, including subsequent purchases of the land in question.

The Supreme Court held that this statute was adequate, that Va. Code § 9-6.14:16 and Part 2A did not apply, and that, therefore, the petitioner's right to review was not barred by the 30-day time limit of Rule 2A:2.

> We agree that the statute under review leaves much to be desired. For example, it fails to provide time limits for filing pleadings. Nevertheless, the statute is not inadequate on its face. It provides for jurisdiction, venue, decision by judge, and optional relief at the Judge's discretion. Moreover, by its express terms, the statute is limited to a single class of cases--appeals from denials of applications for septic tanks. We hold that the statute was adequate and that it was available to Forbes.

Based on *County Utilities* and *Forbes*, it would appear that Va. Code § 9-6.14:16 and Part 2A of the Rules might not apply to the case at hand. If that is the case, then the failure of the plaintiffs to have a Virginia attorney sign the notice and bill may be of no consequence. Sections 32.1-102.1 et seq. contain no requirement that the notice of appeal must be signed. Supreme Court of Virginia Rule 1:4 requires that pleadings are to be signed, but the defendants appear to argue in their brief that a notice of appeal is not a pleading. See Joint Brief in Support of Appellees' Motion to Strike at 5, note 3 (defendants argue that a *petition* for appeal is not a pleading, *a fortiori*, then, a *notice* of appeal is not a pleading either).

In addition, Va. Code § 32.1-102.1 et seq. does not require that the plaintiffs file a petition for appeal or a bill of complaint. *Cf. County Utilities.* Therefore, the fact that they filed one which was signed by a foreign attorney is of no consequences to the action. Because no bill of complaint is required, there is also no time limit in which one can or must be filed. Therefore, allowing the plaintiffs to amend their bill (which asks for ancillary relief as permitted in Va. Code § 9-6.14:16) would violate no time limit.

All in all, it would appear that there exists no persuasive reason to not allow the plaintiffs to amend their notice and bill with the appropriate signature thereon. This view is strengthened by the fact that at least the plaintiffs had retained Virginia counsel, whose name was typed on the notice and bill. Absent a clear signal from the General Assembly or Supreme Court, enforcement of Rule 1A:4 should be left to appropriate criminal and disciplinary actions rather than visit the sins of counsel upon their clients.

3. *Whether NOVA's failure to file an assumed name certificate pursuant to Va. Code Section 59.1-69 should preclude NOVA from pursuing its action for equitable relief?*

Defendants have moved to dismiss the plaintiffs' appeal because of the plaintiffs' failure to file an assume name certificate with the State Corporation Commission as required by Va. Code §§ 59.1-69 and 59.1-70. The defendants assert that although the effect of Va. Code

Section 59.1-76 on an action at law would preclude dismissal if the corporation filed the required certificate prior to final judgment, the statute should not bar an equity court from invoking the clean hands doctrine so as to dismiss the action.

The defendants' motion ignores the plain language of Va. Code § 59.1-76 and misapplies the clean hands doctrine.

Section 59.1-76 reads as follows:

> Section 59.1-76. *Effect of failure to file certificate on right of action.* The failure of any person or corporation to comply with the provisions of this chapter shall not prevent a recovery by or against such person or corporation, in any of the courts in this State on any cause of action heretofore or hereafter arising, but no action shall be maintained in any of the courts in this State by any such person corporation or his or its assignee or successor in title unless and until the certificate required by this chapter has been filed.

It would seem that the language of the statute makes no distinction between actions at law and actions in equity.

In addition, the defendants misapply the "clean hands" doctrine. The doctrine holds that "[h]e who comes into equity must come with clean hands" *in relation to the claim that is being asserted.* D. Dobbs, Handbook on the Law of Remedies 45-6 (1973).

> However, this is not a license to destroy the rights of person whose conduct is unethical. The rule is that unrelated bad conduct is not to be considered against the plaintiff. It is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this conduct. *Id.* at 46.

*Richardson* v. *Musselman*, 221 Va. 181, 267 S.E.2d 164 (1980).

The failure to file the required documents with the State Corporation Commission is in no way related

to the case at hand. To adopt the defendants' view of the clean hands doctrine would result in litigants being barred from courts of equity for any bad acts they may have ever committed. The absurdity of that result speaks for itself.

4. *Whether Elizabeth Altenbach should be dismissed from the case?*

The defendants' motion to dismiss Altenbach from the case is well taken. Under no reasonable interpretation of Va. Code § 32.1-102.7 can she be said to have standing, nor does the bill of complaint indicate upon what, if any, alternative ground she relies to state a cause of action and establish standing. In fact, in the entire 21 pages that make up the bill of complaint there is no indication of just what her role in this case is supposed to be. She is identified and described on page four of the complaint, but otherwise the bill speaks to NOVA's rights and claims, to the exclusion of any material whatever on behalf of Altenbach. Similarly, in *Plaintiffs' Brief in Opposition to Demurrer and Motion Dismiss*, Ms. Altenbach is mentioned only at page 22 (out of 23), and only to the extent that NOVA alleges that failure to grant their CON application means that patients such as Altenbach will be denied service at the *most* convenient location.

Plaintiff NOVA appears to be the real party in interest in this case. The bill of complaint and subsequent memoranda set out and argue their rights and interests alone. To the extent that Ms. Altenbach has any right or cause action, it is unfathomable from the materials submitted in the case to this point. No discernable argument has been advanced as to why Altenbach should not be dismissed from this action.

5. *Whether the demurrer by Fairfax should be sustained on any of the grounds enumerated therein?*

Fairfax relies on a number of alternative grounds to support its demurrer and motion to dismiss. However, all of the grounds flow from the same premise. Essentially, Fairfax argues that the Commissioner rendered two separate and distinct administrative decisions: one was the denial of NOVA's CON application; the other was

the approval of Fairfax's application. According to Fairfax, once past the informal administrative review stage provided by Va. Code § 32.1-102.6, a competing applicant has no standing to object to, or request review of, a decision to grant a CON to a competitor. Therefore, argues Fairfax, while NOVA has a right, pursuant to Va. Code Section 32.1-102.7, to court review of the denial of its CON, it has no standing to require a review of the granting of Fairfax's CON.

Based on this interpretation of the CON statute and regulations, Fairfax asserts the following grounds for its demurrer: (1) that NOVA has no standing to seek review of the Commissioner's decision on the Fairfax application and that, therefore, the court has no jurisdiction over the Fairfax CON; (2) that the Fairfax decision has passed, and that, therefore, the decision of the Commissioner is now res judicata; (3) that NOVA failed, as to the Fairfax application, to exhaust its administrative remedy, and that, therefore, NOVA cannot now seek review; and (4), that NOVA is precluded by the doctrines of laches and abandonment from pursuing any review of Fairfax's application.

The issues raised by the demurrer are made more difficult to resolve due to the fact that the CON statute, on its face, does not appear to deal with two competing applications. Nowhere in the statutes are mentioned phrases such as "comparative review," "mutually exclusive competing application," and the like.

However, a consideration of the purpose behind the CON statute, as well as the agency interpretation of the statute and the regulations adopted thereto, seem to point to the conclusion that *both* applications are subject to review by the court. This conclusion is strengthened by the case law that has developed on comparative review of the competing, mutually exclusive applications.

As a starting point, a consideration of Va. Code Section 32.1-102.7(A) is appropriate. The section reads as follows:

> Section 32.1-102.7. *Appeals.* A. Any applicant aggrieved by a final administrative decision on his application for a certificate, any third-party payor providing health care insurance or prepaid coverage to five percent or more of the patients in the applicant's service

area, a health systems agency operating in the applicant's service area or any person issued a certificate aggrieved by a final administrative decision to revoke his certificate within thirty days after the decision, may obtain a review, as provided in § 9-6.14:17 of the Code, by the circuit court of county or city where the project is intended to be or was constructed located or undertaken. Notwithstanding the provisions of § 9-6.14:16 of the Administrative Process Act, no other person may obtain such review.

Fairfax argues that this language indicates a legislative intent to limit those persons who have standing to seek review of administrative decisions. Fairfax then asserts that, therefore, NOVA has no standing to seek review of the Commissioner's decision to grant a CON to Fairfax.

The first point to note is that while Va. Code Section 32.1-102.7 clearly states *who* shall have a right to review it is ambiguous as to *what* will be reviewed. The statute simply states that the parties who have standing "may obtain *a* review." (italics added) It would appear that the only way to determine what may be reviewed is to first determine what constitutes the agency's "decision."

The second point to note is that the decisions by Judge Marvin F. Cole and Judge Rudolph Bumgardner (cited by Fairfax in its Brief in Support of Demurrer and Motion to Dismiss at 6-7) do not appear to be helpful in deciding the issue at hand. *Virginia Heart Institute* v. *Kenley*,[1] decided by Judge Cole on January 10, 1984, involved a petitioner who was *not* an *applicant* within the meaning of Va. Code § 32.1-102.7. Therefore, Judge Cole's decision on standing of a non-applicant has no relevance to the issue at hand. (In point of fact, in *Virginia Heart Institute*, the applicant who had been granted the CON that the Heart Institute sought to challenge was permitted to intervene in the case in order to protect its interests.) Judge Bumgardner's decision in *Community Hospital of Roanoke Valley* v. *Kenley* may or may not stand for

[1] 3 Va. Cir. 151 (1984) [Reporter's Note].

the proposition advanced by Fairfax. The copy of Judge Bumgardner's order, submitted as Exhibit 2 to Fairfax's Brief in Support of Demurrer and Motion to Dismiss, does not in any way indicate what the issues involved were, or upon what basis the decision rests.

The policy purposes behind certificate of need laws, generally, are several fold. The laws seek to insure the provision of health care services in sufficient quantity and quality, while at the same time controlling costs. See, generally, Havighurst, *Regulation of Health Facilities and Services by "Certificate of Need,"* 59 Va. L. Rev. 1143 (1973). The statutes attempt to achieve these goals through a licensing procedure administered, in Virginia, by the State Board of Health. The statute requires that applications for the construction of new, or expansion of existing, facilities be judged by a specific set of criteria before a decision is reached on whether or not to grant the application. Va. Code § 32.1-102.3 (1983 Cum. Sup.) Where two or more health care providers are applying to provide similar services to the same service area, the effect of the statute (as well as case law in the administrative law area) is to compare the applications, one against the other. This effect is created by the fact that, pursuant to Va. Code 32.1-102.3(A) the agency must make decisions which are consistent with the State Health Plan and the State Medical Facilities Plan. If, or example, these Plans project a future need for ten new dialysis stations in a given area, but there are fifteen applicants, each seeking to build all or some of those stations, then the inevitable result will be that the applications will be reviewed and compared according to the criteria of the statute, with some applications being approved and others being denied. Virginia Code Sections 32.1-102.3(B) 7, 8, 16 and 17 seem, particularly, to speak to the comparative nature of the application review process. See, also, Havighurst at 1171.

A review of the agency regulations applicable to this case further underscores the conclusion that applications for certificates of need to provide similar services in the same service area are often treated as mutually exclusive, competing applications which must be reviewed in a comparative manner.

For example, CON Reg. 6.05 provides:

> *Consideration of Applications* - Insofar as practical, in consideration of the time limits involved as set forth in these Rules and Regulations all applications for the same or similar type projects in the same medical service area shall be reviewed concurrently by reviewing agencies.

When an informal proceeding is requested under Va. Code § 32.1-102.6(F)(1), CON Reg. 10.01.03 requires that the agency must notify not only the applicant whose application is to be reviewed, but all competing applicants as well. In addition, the agency must suspend any certificates of need which have been granted to any of the applicants involved. The regulation reads as follows:

> *Notifications and Suspensions* - Upon receipt of a request for an informal fact-finding conference, the Department shall notify the applicant, Health Systems Agency and competing applicant and suspend the Certificate(s) of Public Need in question.

Similarly, when a formal review of the agency decision is requested pursuant to Va. Code § 32.1-102.6(F)(1), CON Reg. 10.02.01 requires the agency to suspend any certificates which have been previously granted. (The language of CON Reg. 10.02.01 is the same as CON Reg. 10.01.03, quoted above.)

Based on these regulations, as well as the statute (and the policy reasons which underlie the statute) it appears that the agency interprets the statute as requiring a comparative review of competing applications. Under these circumstances, it seems most reasonable to conclude that the agency "case decision," in a situation similar to the one at hand, is the agency's decision on all of the competing applications. Fairfax makes repeated reference to the allegedly separate and distinct nature of the applications. Fairfax, in fact, repeatedly refers to the "NOVA Case Decision" as opposed to the "Fairfax Case Decision." However, while there are several distinct *applications*, it appears that the agency treats all of the competing applications as a group and renders a single, final decision which disposes of all of the applications. For example, all of the applications were disposed of,

by initial agency action, on the same day, February 8, 1983. This initial action on *all* of the applications was affirmed at the informal hearing stage. See, Exhibit A, Plaintiff's Bill of Complaint. In addition, note that Mr. Perry, Assistant Commissioner of Health, makes the following finding of fact on page 3 of his report on the formal hearing:

> These five applications were all considered in the same review cycle pursuant to Section 6.05 of the Certificate of Public Need Rules and Regulations. Therefore, the rationale for approval or denial of the applications by all sources is based on the concurrent review of the proposals, evaluating each on its individual merits and then in comparison to the other applications. Exhibit A, *id.*

The interpretation placed on the statute by the agency is significant for several reasons. First, in situations in which the statute is ambiguous, the interpretation of the agency charged with administering the statute is entitled to great weight. *Commonwealth* v. *Research Analysis Corp.*, 214 Va. 161, 198 S.E.2d 622 (1973); *Meade* v. *Clinchfield Coal Corp.*, 214 Va. 161, 198 S.E.2d 622 (1973); *Meade* v. *Clinchfield Coal Corp.*, 215 Va. 18, 205 S.E.2d 410 (1974). Second, adopting the agency's interpretation requiring comparative review would avoid the irrational result which would obtain if Fairfax's interpretation was followed. If one views the CON review procedure as a comparative one which results in a comprehensive "case decision" which is then subject to court review, then the court review provided by Va. Code Section 32.1-102.7 would be meaningful. On the other hand, if one accepts Fairfax's view that the court can only review NOVA's application and cannot, at the same time, have any power to affect the Fairfax application, then the court review mechanism is without any rational meaning. This situation is discussed by the Commissioner in his Brief in Opposition to the Demurrer and Motion to Dismiss of Fairfax-CAPD Center, Inc., at 3-4. Because of the requirements of the statute, the effect of Fairfax's argument would be to leave the court with two untenable choices. The court could refuse to grant NOVA any relief, regardless of the merits of its claim; or, the court

could vacate or modify the agency decision and grant NOVA its certificate of need. However, if the court does the latter it would violate both the spirit and the letter of the statute (see *infra* at 14-15).

It is unlikely that the General Assembly intended the untenable result that would occur if Fairfax's argument were accepted. Generally, an interpretation of a statute which would render it meaningless or irrational is to be avoided.

It is generally presumed that the legislature does not intend to create an irrational or meaningless statute.

Further, an interpretation of the statute as requiring comparative review; an agency "decision" all of the applications as a whole; and then court review of the entire controversy is consistent with accepted administrative law doctrines. Since the case of *Ashbacker Radio Corp.* v. *FCC*, 326 U.S. 327 (1945), courts have required, in a wide variety of administrative proceedings, that where applications for a license are competing and mutually exclusive, the agency *must* provide for a comparative review and hearing procedure. *See* generally, 5B Mezines, J. Stein, J. Gruff, *Administrative Law*, § 41.04 (1983). This so-called *Ashbacker* doctrine has been extended by a number of courts to the certificate of need area. See, e.g., *Huron Valley Hospital, Inc.* v. *Michigan State Health Facilities Commission*, 110 Mich. App. 236, 312 N.W.2d 422, 426-27 (1981); *Appeal of Behavior Science Institute*, 121 N.H. 928, 436 A.2d 1329, 1333 (1981), *Bio-Medical Applications, Inc.* v. *Office of Community Medical Facilities, Department of Health and Rehabilitative Services*, 374 So.2d 88, 89 (Fla. Dist. Ct. App. 1979); *Bio-Medical Applications, Inc.* v. *Department of Health and Rehabilitative Services, Office of Community Medical Facilities*, 370 So.2d 19, 23-5 (Fla. Dist. Ct. App. 1979). (It is of interest to note that in *Huron Valley Hospital, supra,* the court appeared to hold that comparative review and hearing procedures were a due process requirement, 312 N.W.2d at 426, a view this court is unwilling to extend this case. It would seem only logical that if, at the administrative level, comparative review of competing applications is required, then, at the appeal stage, the court must be able to review the agency's decision on all of those applications.

Fairfax argues that NOVA failed to request an informal administrative review of the Commissioner's decision

to grant Fairfax's certificate, as NOVA could have done pursuant to Va. Code § 32.1-102.6(F). Therefore, argues Fairfax, NOVA thereby waived its statutory right to challenge the administrative decision which granted Fairfax its certificate. Fairfax's argument appears to be meritless for several reasons.

First, it once again presumes that separate and distinct "case decisions are involved and that, therefore, NOVA had to file two informal review requests: one for review of the grant of Fairfax's application: and one for review of the denial of NOVA's application. As discussed *infra*, Fairfax's view of what constitutes a case decision appears to be erroneous. More importantly, Fairfax fails to cite any authority for the proposition that, as a general rule, *all* administrative remedies must be pursued. There appears to be no general requirement in Virginia that administrative remedies must be exhausted before court review is available. Unlike several other statutes, Va. Code § 32.1-102.1 et seq., has no exhaustion requirement. See, e.g., *Forbes* v. *Kenley*, *supra*, (discussing former Va. Code § 32.1-164.1); and *Fairfax County* v. *Miller and Smith, Inc.*, 222 Va. 230, 279 S.E.2d 158 (1981) (discussing Va. Code § 36-105).

Fairfax also asserts a laches defense against NOVA. However, Fairfax fails to delineate in what manner NOVA delayed in asserting its rights. It would appear that NOVA has acted, at every step, in a timely fashion. In addition, Fairfax has received notice of each of those steps and was given opportunity to participate in, at the least, the formal agency review proceeding. See Exhibits A, B, and C to Plaintiff's Brief in Opposition to Demurrer and Motion to Dismiss. The Supreme Court of Virginia recently considered the doctrine of laches in *Morris* v. *Mosby*, 227 Va. 517, 227 V.R.R. 557 (1984). The Court's elucidation of the doctrine is useful in considering Fairfax's claim:

> We first address the laches issue. When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead, the court examines each case in light of the particular circumstances. *Bartach* v. *Bartach*, 204 Va. 462, 468, 132 S.E.2d 416, 420 (1963). Therefore, whether under the circumstances of a given case

a claim is barred by laches is primarily a decision resting within the discretion of the trial court. *Burnett* v. *New York Central Railroad Company*, 380 U.S. 424, 435 (1965); *Gardner* v. *Panama R. Co.*, 342 U.S. 29, 30-31 (1951). Absent an abuse of discretion, its decision will not be disturbed on appeal.

Laches will apply in a specific performance suit only if the delay is accompanied by facts and circumstances tending to show the claimant's intention to abandon the contract. Additionally, the claimant's delay must be unreasonable and prejudicial to the other party. *Hamilton* v. *Newbold*, 154 Va. 345, 351, 153 S.E. 681, 682 (1930). Further, the burden of proving laches is upon the party asserting the defense *Pittman* v. *Pittman*, 208 Va. 476, 479, 158 S.E.2d 746, 749 (1968). *Id.* at 560.

Fairfax has failed in its burden to establish the applicability of the laches defense.

Lastly, Fairfax argues that the agency's decision on its application became final in October, 1983, and that it is now res judicata and cannot now be relitigated by NOVA. Fairfax's argument suffers from three major flaws. Once again, it presumes that there are two separate, distinct "case decisions." As discussed, *infra*, its position on this matter appears to be incorrect. More importantly, however, Fairfax misperceives when an administrative decision becomes "final." The point of CON Rules 10.01.03 and 10.02.01, discussed *infra*, is to prevent an application for a certificate from becoming "final" while controversy remains as to the approved application and any competing applications. These CON rules are analogous to Va. Sup. Ct. Rule 1:1, which allows the trial court to suspend a final judgment while matters relating to it (such as a motion for a new trial) are decided. Fairfax asserts that the appeal provision of Va. Code Section 32.1-102.7 cannot be modified or expanded by a CON regulation. However, it is unclear in what manner the CON rules would have this effect, anymore than Rule 1:1 does as it relates to Va. Code § 8.01-671 (which requires that petitions for appeal be filed within 90 days of any final judgment).

Finally, Fairfax misapplies the doctrine of res judicata. Res judicata bars *relitigation*, in a subsequent action, of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies. *Bates* v. *Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917 (1974). Yet, throughout Fairfax has argued that NOVA did not take an informal administrative appeal from the Commissioner's initial decision on Fairfax's application; *and*, that NOVA could not have taken a formal administrative appeal for a court appeal because NOVA lacked standing. Therefore, NOVA was never, according to Fairfax's logic, a party to any proceeding involving Fairfax's application. Perhaps Fairfax meant to raise the issue of collateral estoppel, which is a doctrine related to res judicata. *Bates*, *supra*. However, the doctrine of collateral estoppel, as it applies in Virginia, also requires an identity of parties (as well as "mutuality"). *Nero* v. *Ferris*, 222 Va. 807, 812, 284 S.E.2d 828 (1981); *Norfolk & Western Ry.* v. *Bailey*, 221 Va. 638, 640, 272 S.E.2d 217 (1980). Again, according to Fairfax's logic, NOVA and Fairfax were never parties to the same action, therefore, collateral estoppel (which precludes relitigation of *issues* as opposed to causes of action) would not apply.

March 29, 1985

On December 17, 1984, the Court heard final argument on the merits of this case as set by order of November 15, 1984, and took the case under advisement. The Court has now had an opportunity to consider the argument of counsel together with the memoranda which they have filed. After doing so, the Court concludes that the plaintiff's Petition must be dismissed and final judgment for the defendants must be entered.

In this case, the plaintiff, Bio-Medical Applications of Arlington (NOVA) seeks to have this Court vacate an administrative decision of the Virginia State Health Commissioner (Commissioner) dated March 6, 1984, denying its request for a Certificate of Public Need (COPN) to expand its renal dialysis facility in Arlington, Virginia, and in granting a competing request of Fairfax-Dialysis-CAPD Center, Inc. (Fairfax Dialysis) for a COPN to establish a new renal dialysis facility in West Springfield, Virginia. The facts of this case as set forth in the

plaintiff's brief, dated November 26, 1984, pages 1-11, are substantially correct so that for the purpose of this decision, they will be the findings of fact made by the Court.

With these facts, the Court will summarize its view of the controlling issues in the case as follows:

## A. *Scope of Review*

The law governing appeals from the Commissioner's decision is found in Va. Code Section 32.1-102.7, which was repealed July 1, 1984. That Section required that review shall be as provided in Va. Code Section 9.6-14:17. Regarding errors at law, that Section requires that the complaining party has the burden "to designate and demonstrate an error of law subject to review by the Court." The Section provides further that such errors of law shall include constitutional and statutory compliance, and the observance of procedure which is not "harmless error." Regarding errors of fact, the Section requires the Court to consider "the substantiality of evidential support for findings of fact." In reviewing fact issues, there is a "presumption of official regularity" and the Court must consider "the experience and specialized competence of the agency," and the purpose of the basic law.

The "substantial evidence" standard found in Va. Code Section 9.6-14:17 was explained in the case of *Va. Real Estate Comm.* v. *Bias*, 226 Va. 264, 269 (1983), as follows:

> The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion. . ." Under this standard, applicable here, the Court may reject the agency's findings of fact "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different. conclusion. . ." (*Emphasis in original text.*) (*Citations deleted.*)

## B. *Comparative Review*

NOVA's primary legal complaint is that it did not receive a full comparative hearing on its application. The Court has previously noted that the basic statute, the policy consideration underlying the statute, the interpre-

tation placed upon the statute by the Commissioner in the promulgation of his rules, and general administrative law principles all suggest the necessity that there be a comparative *review* of the competing applications. Letter opinion dated August 15, 1984, pages 17-20. In discussing general administrative law principles, the Court has also noted that "courts have required. . . that where applications for a license are competing and mutually exclusive, the agency must provide for a comparative review and hearing procedure." *Id.*, page 19. Thus the question here is whether such a comparative review and hearing procedure is required by Virginia law in a COPN case.

The Virginia administrative procedure in COPN cases generally required a determination by the Commissioner to be followed by informal proceedings under Va. Code Section 9-6.14:11, if requested, and thereafter by formal proceedings under Va. Code Section 9-6.14:11, if requested. Va. Code Section 32.1-102.6.

The Virginia case law available on administrative procedure is very limited and does not address the specific question presented by this case. Under Federal and other states' decisions the better view appears to be that the *Ashbacker* doctrine, requiring comparative consideration of competing mutually exclusive applications, is not based upon procedural due process or the Federal Administrative Procedure Act, but upon common sense and the practicalities of consideration of competing applications. *Ashbacker Radio Co.* v. *F.C.C.*, 326 U.S. 327 (1945).

As to the actual procedure to be used in an *Ashbacker* type hearing, the case law is sparse. The cases are split as to whether the *Ashbacker* doctrine requires consolidation of the applications, in most situations, into a comparative hearing. Some courts have held that consolidation into a comparative *hearing* is required. Others point out that the *Ashbacker* case itself says nothing about consolidation and, therefore, the agency need only give comparative *consideration*. In the absence of a clear authority in Virginia on this issue and in view of the split found elsewhere, this Court is unable to conclude that a comparative consideration beyond that which was done here is required by Virginia law. The Court is, therefore, satisfied that there was a minimal but acceptable comparative review here albeit without a formal comparative hearing

which the Court deems in this case not to have been required by Virginia law.

## C. *Other Alleged Errors of Law and Fact*

The Court has reviewed the numerous other alleged errors of law and fact against the record in this case but has been unable to conclude under the scope of its review power that these allegations are a basis for granting the plaintiff the relief it seeks.